**In re Ruth A. SEARLES, Debtor.**

**Ruth A. Searles, Appellant,**

**v.**

**Charles L. Riley, Jr., Chapter 7 Trustee, Appellee.**

BAP. No. AZ–04–1173–KSB.
Bankruptcy No. 01–16135–PHX–RTB.
Adversary No. 02–00189.

United States Bankruptcy Appellate Panel of the Ninth Circuit.

Argued and Submitted on Sept. 21, 2004.

Filed Nov. 5, 2004.

Elizabeth A. Winter, Scottsdale, AZ, for Ruth A. Searles.

Terry A. Dake, Phoenix, AZ, for Charles L. Riley, Trustee.

Before KLEIN, SMITH, and BRANDT, Bankruptcy Judges.

## OPINION

KLEIN, Bankruptcy Judge.

This is an appeal from a judgment denying the chapter 7 discharge of an individual and of her marital community for withholding from the trustee, and not scheduling interests in, community property that is property of the estate.

Concluding that an adversary proceeding objecting to discharge survives conversion to chapter 13, that each successor trustee is automatically substituted as a party, and that discharge denial is warranted for debtor's omission to schedule and surrender community property to the trustee, we AFFIRM.

## FACTS

Appellant, Ruth Searles, has been the debtor in two Arizona bankruptcy cases. She filed a chapter 13 case in 1999, which was dismissed in May 2001. She filed the second on December 3, 2001, under chapter 7, converting it to chapter 13 in the face of the trustee's efforts to control property. Following an eventual reconversion to chapter 7, discharge was denied.

Scheduled unsecured debt was $55,410.91, of which $52,344.54 was owed on twelve credit cards.

Stanley Searles, her spouse since 1966, was not a debtor in either bankruptcy case, even though Arizona is a community property state where the grant or denial of a discharge directly affects his community property rights and obligations and, in the 2001 case, could be effectively discharged from $55,410.91 in debt. The court ultimately ruled that he "played a major role" in orchestrating the fateful strategy that lost the discharge.

In the 1999 case, Mrs. Searles scheduled interests in a sole proprietorship insurance agency that Mr. Searles founded in 1974 during their marriage and in a 1997 Mitsubishi automobile.

Neither the proceeds of the sale of the insurance agency in 2000, nor the Mitsubishi, appear on the 2001 schedules.

The insurance agency was sold April 30, 2000, to a Searles child in a deal that yielded a stream of monthly payments through 2010. Mrs. Searles signed the Purchase and Sale Agreement ("Agreement"), "consenting" to the sale and "releasing" her community property interest. The allocated sales price reported on their 2000 joint federal income tax return was $225,215. There was no mention of this transaction in her chapter 13 case.

As of the filing of the second bankruptcy in 2001, there remained due under the Agreement, a total of $252,500 ($2,500 × 101 months). If Mr. Searles were to die before the final installment, then the monthly payments would be reduced to $1,000 and be paid to Mrs. Searles. Thus, if Mr. Searles had died the moment of bankruptcy, then $101,000 ($1,000 × 101 months) would have remained due to Mrs. Searles.

At the trial on the objection to discharge, however, it was asserted the agency collapsed because the represented insurance company rejected the purchasing Searles child as an agent, which impediment the court viewed as self-inflicted by the Searles.

Mrs. Searles' schedule B valued a joint account at Wells Fargo Bank at $150, when its actual balance was $5,406.77.

She scheduled no interest in two motor vehicles that were titled in Mr. Searles' name, but being paid for from their joint bank account. One such vehicle was the 1997 Mitsubishi that Mrs. Searles had scheduled in her 1999 case.

Five days before bankruptcy, November 28, 2001, the law firm for which Mrs. Searles had worked for 17 years informed her that she would receive "by the end of November 2001" a $4,767 "corrective payment" under a profit sharing plan. The firm sought instructions, absent which the funds would be held in an interest-bearing account. On January 11, 2002, there was deposited a check payable to "Ruth Searles" for $3,822.62 [=.(.80 × $4,767) + $9.02 int.] into a Bank of America account opened by Mr. Searles on January 2, 2002. Schedules were not amended to add this asset, which was not surrendered to the trustee.

On March 15, 2002, the chapter 7 trustee filed an adversary proceeding, seeking a money judgment against both Mr. and Mrs. Searles on account of undisclosed property, including proceeds of sale of the insurance business, alleged to be community property that is property of the estate under 11 U.S.C. § 541(a)(2) and seeking denial of discharge of Mrs. Searles and of the marital community pursuant to 11 U.S.C. §§ 727(a)(2)(B) and 727(a)(4)(A).

On April 8, 2002, the case was converted to chapter 13 on a motion filed by the debtor on April 4, 2002.

On April 17, 2002, the debtor answered the complaint in the adversary proceeding, asserting that the chapter 7 trustee lacked standing following conversion of the case.

The court, on motion, substituted the chapter 13 trustee as the adversary proceeding plaintiff.

Trial was held on the community property issue in the adversary proceeding on June 5, 2003, along with an objection to the chapter 13 plan that would pay $65.00/month for 45 months.

The court ruled that the sale proceeds are community property, hence property of the estate, declined to confirm the chapter 13 plan, and reconverted the case to chapter 7. The conversion order entered August 13, 2003, was not appealed.

Motions were made for entry of judgment on the community property issue and to substitute the re-appointed chapter 7 trustee in lieu of the chapter 13 trustee as plaintiff.

Determining, per Federal Rule of Civil Procedure 54(b), that there was no just reason for delay and expressly directing entry, judgment was entered October 31, 2003, declaring all Searles property, including sale proceeds under the Agreement, to be community property and property of the estate under § 541(a)(2), and directing turnover. The judgment was not appealed.

On subsequent trial of the discharge question, judgment entered March 24, 2004, denying discharge to Mrs. Searles and the Searles marital community under §§ 727(a)(2)(B) and (a)(4)(A).

The court found the absence of Mr. Searles from the further proceedings conspicuous and determined that he was no

innocent bystander in the events that led to the denial of discharge.

Mrs. Searles timely appealed the judgment denying discharge.

## JURISDICTION

The bankruptcy court had jurisdiction via 28 U.S.C. §§ 1334 and 157(b)(1). We have jurisdiction under 28 U.S.C. § 158(a)(1).

## ISSUES [1]

1. Whether an adversary proceeding objecting to discharge abates upon conversion from chapter 7 to chapter 13.

2. Whether conversion to chapter 13 from chapter 7 moots a pending adversary proceeding seeking to determine whether property is property of the estate.

3. Whether discharge was correctly denied for transferring or concealing property of the estate per 11 U.S.C. § 727(a)(2).

4. Whether the discharge was correctly denied on account of a false oath per 11 U.S.C. § 727(a)(4)(A).

## STANDARDS OF REVIEW

■ Abatement and mootness are reviewed de novo. *Official Committee v. Henry Mayo Newhall Mem'l Hosp. (In re Henry Mayo Newhall Mem'l Hosp.)*, 282 B.R. 444, 448 (9th Cir. BAP 2002).

■ Clarification of the standard of review for denials of discharge under § 727 is in order. Although older Ninth Circuit decisions used phrases such as abuse of discretion or "gross" abuse of discretion in review of § 727 decisions, an en banc panel has clarified that such decisions must be construed as prescribing de novo review of legal conclusions, clear error review of factual findings, and de novo review of mixed questions of law and fact. *Murray v. Bammer (In re Bammer)*, 131 F.3d 788, 792 (9th Cir.1997)(en banc), *overruling, e.g., Finalco, Inc. v. Roosevelt (In re Roosevelt)*, 87 F.3d 311, 314, *as amended* 98 F.3d 1169 (9th Cir.1996) ("gross abuse of discretion"), *and Friedkin v. Sternberg (In re Sternberg)*, 85 F.3d 1400, 1404 (9th Cir.1996)("sound discretion of the bankruptcy court").

■ A mixed question of law and fact exists if historical facts are established, the rule of law is undisputed, and the issue is whether the facts satisfy the legal rule. *Pullman–Std. v. Swint*, 456 U.S. 273, 289 n. 19, 102 S.Ct. 1781, 72 L.Ed.2d 66 (1982); *Bammer*, 131 F.3d at 792; *United States v. McConney*, 728 F.2d 1195, 1200 (9th Cir.1984)(en banc).

The rationale for de novo review of mixed questions is that such questions require a trial court to consider legal concepts and exercise judgment about values animating legal principles. *Bammer*, 131 F.3d at 792; *McConney*, 728 F.2d at 1204.

■ Thus, after *Bammer*, the Ninth Circuit standard of review of a judgment on an objection to discharge is that: (1) the court's determinations of the historical facts are reviewed for clear error; (2) the selection of the applicable legal rules under § 727 is reviewed de novo; and (3) the application of the facts to those rules requiring the exercise of judgments about values animating the rules is reviewed de novo. *Beauchamp v. Hoose (In re Beauchamp)*, 236 B.R. 727, 729–30 (9th Cir. BAP 1999).

## DISCUSSION

Appellant argues, first, that the objection-to-discharge adversary proceeding

---

**1.** Although appellant asserts that the reconversion from chapter 13 to 7 was procedurally incorrect due to defective notice, the reconversion order was not appealed. The issue is not properly before us in this appeal.

should have been dismissed as abated or moot upon conversion to chapter 13 and, second, that the discharge should not have been denied. We address the questions in order.

## I

Contrary to appellant's assertion that the "court erred in failing to dismiss the Chapter 7 complaint upon Debtor's conversion to a Chapter 13 proceeding," the conversion of the bankruptcy case from chapter 7 to chapter 13 did not abate or moot the adversary proceeding.

## A

■ Since a case converted from chapter 7 to chapter 13 cannot be dismissed as of right under § 1307(b), every such conversion carries with it the possibility of reconversion to chapter 7. 11 U.S.C. § 1307(b); *Croston v. Davis (In re Croston)*, 313 B.R. 447, 452 (9th Cir. BAP 2004) ("no absolute right to remain in the chapter to which the case is converted").

One implication of the fact that reconversion to chapter 7 cannot be ruled out is that pending litigation addressed to issues specific to chapter 7 may recede into the background while the case is in chapter 13 but may later re-emerge. Although there may be no reason to resolve the chapter 7 discharge question during the pendency of the case in chapter 13, such dormancy does not equate with mootness. Indeed, the fact that a meritorious objection-to-discharge adversary proceeding is actually on file may serve the useful purpose of increasing a debtor's incentives to confirm and complete performance of a chapter 13 plan.

It follows from the existence of the potential for reconversion to chapter 7 that an adversary proceeding objecting to discharge does not abate upon conversion to chapter 13 and, hence, is not moot on that account.

## B

■ Regardless of the status of the objection-to-discharge issue, this particular adversary proceeding was not moot in chapter 13. It also sought a determination that various items of property, including proceeds of the sale of the insurance agency, were community property that qualified as property of the estate. That question remained important in chapter 13 because its answer would govern application of the "best interest" test that is an essential element of plan confirmation. 11 U.S.C. § 1325(a)(4).

As the chapter 13 trustee has a duty to appear and be heard on plan confirmation, the community property question was within his ken. 11 U.S.C. § 1302(b)(2)(B); *Andrews v. Loheit (In re Andrews)*, 49 F.3d 1404, 1406–08 (9th Cir.1995); *Meyer v. Hill (In re Hill)*, 268 B.R. 548, 554–55 (9th Cir. BAP 2001). Although it is common to litigate such an issue at a plan confirmation hearing, there is no reason why it could not be resolved by trial of that issue in the adversary proceeding.

■ The court elected to resolve the portion of the pending adversary proceeding that involved the community property issue, which was as pertinent in chapter 13 as in chapter 7, in tandem with confirmation and elected to defer action on the objection to discharge until after the case was reconverted to chapter 7.

This separate trial of the community property issue within the adversary proceeding reflects straightforward application of Federal Rule of Civil Procedure 42(b), which permits: the "court, in furtherance of convenience . . ., or when separate trials would be conducive to expedition and economy, [to] order a separate trial of any claim, . . . or of any separate

issue." Fed.R.Civ.P. 42(b), *incorporated by* Fed. R. Bankr.P. 7042.

The community property issue needed to be resolved in order to assess chapter 13 plan confirmation and, thus, furthered convenience and was conducive to expedition and economy. *Id.*

As there was no need to resolve the objections to discharge unless and until the case was re-converted to chapter 7, the deferral of trial of the objections likewise furthered convenience and was conducive to expedition and economy. *Id.*

The court did not abuse its discretion by holding a separate trial of an issue in an adversary proceeding that had not abated.

## II

 The appellant contends that it was error to allow "the Chapter 13 Trustee to pursue the Chapter 7 trustee's original Adversarial Complaint." This assertion ignores the automatic substitution rule for successor trustees.

Whenever a trustee ceases to hold office during the pendency of a bankruptcy case, the successor trustee is "automatically substituted as a party in any pending" adversary proceeding. Fed. R. Bankr.P. 2012(b).

Rule 2012(b) implements 11 U.S.C. § 325 and is modeled on the public officer automatic substitution provision of Federal Rule of Civil Procedure 25(d)(1), which applies in adversary proceedings and amplifies that: an "order of substitution may be entered at any time, but the omission to enter such an order shall not affect the substitution." Fed.R.Civ.P. 25(d)(1), *incorporated by* Fed. R. Bankr.P. 7025.[2]

The omission in Rule 2012 of the same amplification regarding the effect of an order of substitution as appears in Rule 25(d)(1) is of no consequence. The Bankruptcy Code compels substitution. 11 U.S.C. § 325 ("the successor trustee shall be substituted as a party"). Both rules make the substitution of the successor "automatic."

Moreover, since Rule 25(d)(1) actually applies in adversary proceedings, it would be nonsense to provide for automatic substitution without an order of substitution in the instance of a successor public officer under Rule 25(d)(1) but not in the instance of a successor bankruptcy trustee under Rule 2012(b).

 To be sure, the appellant correctly questions the standing of the chapter 7 trustee to have made the initial substitution motion after conversion to chapter 13. Upon conversion, the chapter 7 trustee was displaced and his administration of the estate preempted. 11 U.S.C. § 348(c); *In re Rakosi,* 99 B.R. 47, 50 (Bankr.S.D.Cal. 1989); *cf. In re Barnes,* 275 B.R. 889, 892–93 (Bankr.E.D.Cal.2002). The standing of a displaced chapter 7 trustee in a chapter 13 case ordinarily is as an administrative claimant protecting his personal financial interest. *Barnes,* 275 B.R. at 892–93; *In re DeLash,* 260 B.R. 4, 7 (Bankr. E.D.Cal.2000). This standing question, however, is irrelevant to this appeal because the substitution of the new chapter

---

**2.** Rule 25(d)(1) provides:

(1) When a public officer is a party to an action in an official capacity and during its pendency dies, resigns, or otherwise ceases to hold office, the action does not abate and the officer's successor is automatically substituted as a party. Proceedings following the substitution shall be in the name of the substituted party, but any misnomer not affecting the substantial rights of the parties shall be disregarded. An order of substitution may be entered at any time, but the omission to enter such an order shall not affect the substitution.

Fed.R.Civ.P. 25(d)(1), *incorporated by* Fed. R. Bankr.P. 7025.

13 trustee was automatically effective upon conversion without any motion.

Thus, the two orders of substitution that were entered in favor of the respective successor trustees in the adversary proceeding following the conversion and reconversion of the case were not necessary under Rule 2012(b) and § 325. Such orders of substitution are common and serve a useful clarifying function, but their entry was no occasion for error.

## III

The balance of this appeal addresses the denial of discharge of appellant and of the marital community, as a result of further trial of the adversary proceeding that was conducted in 2004 after the case was reconverted to chapter 7.

■ The burden of proof in an adversary proceeding objecting to discharge under § 727 is preponderance of evidence. *Grogan v. Garner*, 498 U.S. 279, 289, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991); *Lansdowne v. Cox (In re Cox)*, 41 F.3d 1294, 1297 (9th Cir.1994).

## A

■ We note that, as a result of the unappealed Rule 54(b) judgment, the community property status of the relevant property as property of the estate is incontestable.

The property—including proceeds of the sale of the insurance agency, the Mitsubishi vehicle, and the profit-sharing distribution—was preclusively established to be community property and property of the estate in a judgment entered in accordance with Rule 54(b)'s "determination and direction" requirement and that was not timely appealed. Fed.R.Civ.P. 54(b), *incorporated by* Fed. R. Bankr.P. 7054(a).[3]

Since the debtor actually litigated and lost the community property issue, the elements for issue preclusion were satisfied once the judgment became final. RESTATEMENT(2D) OF JUDGMENTS § 27.[4]

We must, accordingly, accept that all relevant Searles property is community property. Moreover, even though not all community property is necessarily property of the estate, the determination that all Searles community property is property of the estate, compels us to accept the proposition that all such community property was either under the "sole, equal, or joint management and control" of Mrs. Searles or "liable for an allowable claim against

---

**3.** Rule 54(b) provides:

 (b) Judgment Upon Multiple Claims or Involving Multiple Parties. When more than one claim for relief is presented in an action, whether as a claim, counterclaim, cross-claim, or third-party claim, or when multiple parties are involved, the court may direct the entry of a final judgment as to one or more but fewer than all of the claims or parties *only upon an express determination that there is no just reason for delay and upon an express direction for the entry of judgment.* In the absence of such determination and direction, any order or other form of decision, however designated, which adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties shall not terminate the action as to any of the claims or parties, and the order or other form of decision is subject to revision at any time before the entry of judgment adjudicating all the claims and the rights and liabilities of all the parties. Fed.R.Civ.P. 54(b), *incorporated by* Fed. R. Bankr.P. 7054 (emphasis supplied).

**4.** The rule of issue preclusion (formerly known as collateral estoppel) provides:

 § 27. Issue Preclusion—General Rule
 When an issue of fact or law is actually litigated and determined by a valid and final judgment, and the determination is essential to the judgment, the determination is conclusive in a subsequent action between the parties, whether on the same or a different claim.
RESTATEMENT (2D) OF JUDGMENTS § 27.

[Mrs. Searles], or for both an allowable claim against [Mrs. Searles] and an allowable claim against [Mr. Searles]." 11 U.S.C. § 541(a)(2)(A)-(B). In other words, Mrs. Searles' assertions that Mr. Searles controlled the family finances are rendered unavailing by virtue of issue preclusion.

B

The court denied the discharge pursuant to § 727(a)(4)(A) on account of the false oath inherent in schedules executed under penalty of perjury that omitted material interests in property.[5]

■■■ Denial of discharge under § 727(a)(4)(A) requires proof, by a preponderance of the evidence, that: (1) there was a false statement under oath or penalty of perjury; (2) made knowingly and fraudulently; and (3) regarding a material fact. *Aubrey v. Thomas (In re Aubrey)*, 111 B.R. 268, 274 (9th Cir. BAP 1990).

■■■ The requisite false oath may involve either an affirmatively false statement or an omission from the debtor's schedules. *Fogal Legware of Switz., Inc. v. Wills (In re Wills)*, 243 B.R. 58, 62 (9th Cir. BAP 1999). Such schedules must be verified or contain an unsworn declaration under penalty of perjury. 28 U.S.C. § 1746; Fed. R. Bankr.P. 1008.

■■■ A false oath is complete when made. *Sholdra v. Chilmark Fin. LLP (In re Sholdra)*, 249 F.3d 380, 382 (5th Cir. 2001); cf. *Beauchamp*, 236 B.R. at 732–34(§ 727(a)(2)). The fact of prompt correction of an inaccuracy or omission may be evidence probative of lack of fraudulent intent. *Beauchamp*, 236 B.R. at 733.

Where the offending oath is contained in the schedules or required statements, the debtor's continuing duty to assure the accuracy of such schedules and statements means that the proper method of correction is a formal amendment of the schedules. An unfiled letter to the trustee does not suffice because it is not in the plain view of all parties in interest who should be entitled to rely on the accuracy of the court's official file.

■■■ The court found that there were a number of materially false statements or omissions in the schedules, which were not amended.

First, the schedules valued the Wells Fargo bank account at $150.00 as of the date of filing, December 3, 2001. The actual value on that date was its $5,406.77 account balance. Although appellant contends that when she signed her bankruptcy petition and schedules on November 26, 2001, the account had a balance of $26.88, the surrounding circumstances and pattern of deposits support a factual inference that she knew the balance would be higher when the petition was actually filed and intended to list a sum below the trustee's radar screen. The court concluded the magnitude of the inaccuracy was material. The failure to amend the schedules promptly upon noting the discrepancy supports the court's inference of intent. We perceive no error.

Another material omission was the $3,822.62 received from the former employer's profit sharing plan. The funds, which resulted from audit negotiations between the former employer and the Internal Revenue Service, were unambiguously prepetition assets received on account of employment that ended prepetition.

---

5. Section 727(a)(4)(A) authorizes denial of discharge for:

(4) the debtor knowingly and fraudulently, in or in connection with the case—(A) made a false oath or account;

11 U.S.C. § 727(a)(4)(A).

■ Even if the court had believed appellant's assertion that she did not actually know about this windfall from the former employer when the bankruptcy was filed, her argument is unavailing. Every debtor has a continuing duty to assure the accuracy and completeness of schedules. Postpetition discovery of rights that actually existed at the time of filing must be addressed in the schedules. This implies a duty to amend.

Although the rules may be inexact about this continuing duty to amend schedules to reflect property of the estate accurately,[6] the Bankruptcy Code is not ambiguous about the consequences of not reporting the receipt of property of the estate: discharge may be revoked pursuant to 11 U.S.C. § 727(d)(2).[7]

The continuing nature of the duty to assure accurate schedules of assets is fundamental because the viability of the system of voluntary bankruptcy depends upon full, candid, and complete disclosure by debtors of their financial affairs.

Moreover, Rule 4002(3) commands all debtors to inform the trustee immediately in writing of the name and address of everyone holding money or property subject to the debtor's withdrawal or order if a schedule of property has not yet been filed pursuant to Rule 1007. Fed. R. Bankr.P. 4002(3).[8]

We construe the clause in Rule 4002(3) "if a schedule of property has not yet been filed" to mean a schedule, including an amended schedule, that lists the specific property. Otherwise, the purpose of the rule—which assures that trustees receive prompt notice of the existence of property that has not yet been scheduled—would be subverted by the stratagem of filing an incomplete schedule and then being lackadaisical about communicating the "oh! by the ways" to the trustee.

Appellant, thus, is chargeable with the omission to report the payment from the profit-sharing plan. She unquestionably knew of its existence. While the court believed that appellant was ignorant of the letter from the former employer as of the day the bankruptcy case was filed, it would not matter if she did not acquire the information until later because, in either event, she knew of its existence. The manner in which the profit-sharing payment was not disclosed and then was placed in a joint account and spent amply warrants an inference of fraudulent intent.

The omission from the schedules of the profit sharing funds is a false oath under § 727(a)(4)(A); reciprocally, if not a knowing and fraudulent false oath preventing

---

**6.** Federal Rule of Bankruptcy Procedure 1007(h) arguably (at least since the 1987 amendment inserting a specific statutory reference) applies only to property that qualifies as property of the estate under 11 U.S.C. § 541(a)(5).

**7.** That section provides:

> (d) On request of the trustee, a creditor, or the United States trustee, and after notice and a hearing, the court shall revoke a discharge granted under subsection (a) if—
> . . .
> (2) the debtor acquired property that is property of the estate, or became entitled to acquire property that would be property of

the estate, and knowingly and fraudulently failed to report the acquisition of or entitlement to such property, or to deliver or surrender such property to the trustee;

11 U.S.C. § 727(d)(2).

**8.** The rule provides:

> In addition to performing other duties prescribed by the Code and rules, the debtor shall . . . (3) inform the trustee immediately in writing as to . . . the name and address of every person holding money or property subject to the debtor's withdrawal or order if a schedule of property has not yet been filed pursuant to Rule 1007;

Fed. R. Bankr.P. 4002(3).

discharge, then it is a knowing and fraudulent failure to report that would require revocation of discharge under § 727(d)(2). We perceive no error in using this omission as a basis for denying discharge.

Another material omission is the receivable from the sale of the insurance agency. Here, the evidence is compelling. Appellant actually scheduled a one-half interest in the agency in her 1999 case. The sale did not transmute the proceeds into separate property. The marital community paid taxes on the sale. She not only has a community property interest in the $2,500 monthly payment of sale proceeds, she also has a contingent separate property interest in $1,000 per month that would be triggered by the demise of Mr. Searles. We perceive no error in using this omission as a basis for denying discharge.

Another material omission on a par with the insurance business is one of the two undisclosed motor vehicles. Appellant actually scheduled a one-half interest in the Mitsubishi in her 1999 case. Nothing appears to have changed. The mere fact of omission in such circumstances warrants finding that the omission was knowing and fraudulent. We perceive no error in using this omission as a basis for denying discharge.

The court noted other omissions that we need not catalog because the omissions outlined above each independently justify denial of discharge under § 727(a)(4) as material, knowing, and fraudulent false oaths. Cumulatively, they are even more material, as well as being knowing and fraudulent false oaths.

Accordingly, because the debtor, either in concert with or as a proxy for Stanley Searles, knowingly and fraudulently failed to disclose and hid assets from the chapter 7 trustee, and those assets were of material value to the estate, the bankruptcy court correctly denied the debtor a discharge under § 727(a)(4)(A).

## C

The court denied appellant and her marital community a discharge pursuant to § 727(a)(2)(B) for postpetition obstruction of the trustee's efforts to obtain community property.

The court ultimately concluded, by a preponderance of evidence, that appellant, intending to hinder or delay or defraud the trustee, transferred, removed, destroyed, mutilated, or concealed (or permitted to be transferred, removed, destroyed, mutilated, or concealed) property of the estate, including the sale proceeds from the insurance business, funds in bank accounts, and vehicles, after the filing of the petition.[9]

■■■ Under the plain language of § 727(a)(2)(B), intent to hinder, intent to delay, and intent to defraud will each, independently, suffice under § 727(a)(2)(B) for discharge denial.

■■■ Whether a debtor harbors "intent" to hinder, or to delay, or to defraud the trustee or a creditor is a question of fact that requires the trier of fact to delve into the mind of the debtor and may be inferred from surrounding circumstances. *Emmett Valley Assocs. v. Woodfield (In re Woodfield)*, 978 F.2d 516, 518 (9th Cir.

---

9. Section 727(a)(2)(B) provides:
(a) The court shall grant the debtor a discharge, unless—....
 (2) the debtor, with intent to hinder, delay, or defraud a creditor or an officer of the estate charged with custody of property under this title, has transferred, removed,

destroyed, mutilated, or concealed, or has permitted to be transferred, removed, destroyed, mutilated, or concealed—....
 (B) property of the estate, after the date of the filing of the petition[.]
11 U.S.C. § 727(a)(2)(B).

1992). Similarly, a course of conduct may be probative of the question. *Devers v. Bank of Sheridan (In re Devers)*, 759 F.2d 751, 753–54 (9th Cir.1985).

Two other statutory landmarks loom large in this landscape. First, every chapter 7 debtor must "surrender to the trustee all property of the estate." 11 U.S.C. § 521(4). Second, failure to surrender to the trustee property of the estate that a debtor acquires or becomes entitled to acquire is an occasion to revoke a discharge. 11 U.S.C. § 727(d)(2).

■■■■ The discharge was denied because the community property was not handed over to the trustee. Instead, the appellant engaged in prolonged warfare with the trustee resisting surrender of property that was unambiguously property of the estate.

One example that suffices to sustain the court's judgment is the receipt of the $3,822.62 profit sharing payment from appellant's prepetition employer. The court concluded that the sum was material, and that the deposit into the Bank of America account and dissipation of the funds without their surrender was indicative of intent to hinder, or to delay, or to defraud the trustee with respect to property of the estate after the date of the filing of the petition within the meaning of § 727(a)(2)(B).

Another example that independently suffices to sustain the court's judgment is the Mitsubishi automobile in which appellant claimed a one-half interest in her 1999 bankruptcy schedule of assets. And did not schedule in the second bankruptcy.

Similarly, appellant claimed a one-half interest in the insurance agency as an asset in her 1999 bankruptcy. The agency sale yielded monthly payments of $2,500 for 101 months after the filing of the 2001 bankruptcy. There is no merit in the proposition that she had no interest in the sale proceeds in light of the fact that the contract provides for $1,000 per month for her should her spouse die before the end of the term.

By the time that the objection to discharge was tried, the insurance business in the hands of Mr. Searles' daughter had apparently evaporated, eliminating the stream of income. The court viewed this situation as smacking of hindering, concealing, and destroying assets and made clear that it was basing its decision, at least in part, on credibility of the witnesses.[10] It saw the predicament as self-

---

10. The court's pertinent oral findings were:

Mrs. Searles, Mr. Searles and perhaps others have made every conceivable assertion as to why the proceeds from the sale of the insurance agency is not an asset in this case.

And every time the trustee made a move for it they tried to put up a blocking action. In the last action they brought in the insurance company, and whether it's a legitimate position by the insurance company or the daughter of Mr. Searles or them both or it's simply a subterfuge to further again remove the proceeds of that asset, they effectively blew that asset up over the course of the trial about whether it was a community asset or not. It's gone; at least at this point.

And the Court notes, finds it rather interesting that the daughter is contending that she was defrauded by her father when she purchased the insurance agency.

The Court notes that almost every insurance company when they take on a new agency puts them through a course of training about how they operate their business. And so, either Ms. Steele knew or had the ability to find out what restrictions, if any, existed in that insurance agency.

To be blunt about it, the Court looks at the claims of fraud and deception by the daughter against the father with a great deal of skepticism.

But, coming back to the simple view. This was a case that had assets, but the schedule said no assets. And every time the

inflicted. We perceive no error in these findings.

As we perceive no error in application of the findings to the law based on the record before us, we cannot say that the bankruptcy court erred when it denied the debtor and her marital community a discharge under § 727(a)(2)(B).

## CONCLUSION

The bankruptcy court did not err when it denied the debtor a discharge under §§ 727(a)(2)(B) and (a)(4)(A). AFFIRMED.

trustee made a move there was some effort to hinder, delay and defraud.

The insurance agency proceeds were removed from the trustee, they've now been destroyed, and at times they were concealed from the trustee. And the Court views with a great deal of skepticism the debtor's assertion that she did not knowingly and fraudulently not disclose these things in [her] schedules. It's hard to look at the schedules in the first case and the schedules in the second case and say that the debtor and perhaps others in concert with her did not do those things intentionally.

Tr., March 18, 2004, at 4–5.