**NOT FOR PUBLICATION**

# UNITED STATES BANKRUPTCY APPELLATE PANEL
## OF THE NINTH CIRCUIT

| | |
|---|---|
| In re:<br>CLIFTON SANDERS and TASHAWN SANDERS,<br><br>          Debtors. | BAP Nos. NC-25-1169-CSG<br>NC-25-1170-CSG<br>(related appeals)<br><br>Bk. No. 23-10292 |
| CLIFTON SANDERS; TASHAWN SANDERS,<br>          Appellants,<br>v.<br>UST- UNITED STATES TRUSTEE, SANTA ROSA<br>          Appellee. | Adv. No. 23-01020<br><br>**MEMORANDUM**[*] |

Appeal from the United States Bankruptcy Court
for the Northern District of California
William J. Lafferty, Bankruptcy Judge, Presiding

Before: CORBIT, SPRAKER, and GAN, Bankruptcy Judges.

## INTRODUCTION

Chapter 7[1] debtors Clifton and Tashawn Sanders appeal an order

---

[*] This disposition is not appropriate for publication. Although it may be cited for whatever persuasive value it may have, *see* Fed. R. App. P. 32.1, it has no precedential value, *see* 9th Cir. BAP Rule 8024-1.

[1] Unless specified otherwise, all chapter and section references are to the

denying their discharge under § 727(a)(4)(A) for false oaths and § 727(a)(2)(B) for concealment or transfer of assets post-petition. We AFFIRM.

## FACTS[2]

### A. Background information.

Clifton and Tashawn Sanders filed a chapter 7 bankruptcy petition on June 13, 2023 ("Current Case"). The Sanders were represented by the Law Offices of Robert L. Goldstein ("Goldstein Law"). *Id.* Marlene G. Weinstein was appointed as the chapter 7 trustee (the "Trustee").

Ms. Sanders is an attorney, licensed in California since 1997. At the time of filing the Current Case, she was employed as Chief Deputy Counsel for Sonoma County. Before that, she worked in the L.A. District Attorney's Office. Mr. Sanders has a master's degree in business communication. From approximately 2013 or 2014 to May 2023, he ran a package and postal business. Although it began as a UPS franchise, Mr. Sanders stated that sometime between 2017 and 2019, he broke away from UPS and went independent, operating as Pinole Package and Postage, LLC ("Pinole"). Mr. Sanders ceased operating and unsuccessfully tried to sell Pinole in 2023. Mr. Sanders also owned and managed apartment buildings in Las

---

Bankruptcy Code, 11 U.S.C. §§ 101-1532.

[2] We exercise our discretion, when appropriate, to take judicial notice of documents electronically filed in the underlying bankruptcy case and adversary proceeding. *See Atwood v. Chase Manhattan Mortg. Co. (In re Atwood)*, 293 B.R. 227, 233 n.9 (9th Cir. BAP 2003).

Vegas and Chicago, including an apartment building on S. Yates Boulevard in Chicago, Illinois ("Yates Property").

In 2017, Ms. Sanders formed TACCC, LLC ("TAC"). Ms. Sanders testified it was formed to hold Pinole while Mr. Sanders testified that it was "established" to "keep track of [the Sanders's] personal accounts and business accounts." A bank account ending in x3103 identifying TAC as the owner of the account ("TAC Account") was used to pay expenses related to the Yates Property.

**B.      The Sanders's 2018 bankruptcy case.**

The Sanders, represented by Goldstein Law, completed a chapter 13 bankruptcy in 2019 and were granted a discharge ("Prior Bankruptcy Case"). In their Prior Bankruptcy Case, the Sanders disclosed their interest in the Yates Property, their interest in the two business entities, Pinole and TAC, and their interest in several bank accounts, including the TAC Account and an account ending in x-3180 ("Personal Account").

**C.      Omissions in the Current Case.**

Unlike their Prior Bankruptcy Case, in their Current Case the Sanders did not list an interest in any real property, they did not list or identify any ownership interest in TAC, and they did not disclose their Personal Account or the TAC Account. The Sanders also reported that they did not have any tax refunds owed to them.

**1.      The § 341 meeting of creditors.**

The first § 341 meeting of creditors occurred on July 28, 2023. At the

3

beginning of the meeting, the Sanders each testified under oath that they "sign[ed]" the "petition, schedules, and statements and related documents filed in [their] case," that each "read them before [they] signed them," that each was "personally familiar with the information contained in the documents," that the information was "true and correct" and that there were no errors or omissions.

Despite his initial testimony that there were no errors or omissions in the schedules, Mr. Sanders admitted to the Trustee that he had failed to disclose his interest in the Yates Property. Mr. Sanders testified that although he rented the Yates Property to tenants from 2012-2018 it was currently dilapidated and no longer suitable as a rental property. When pressed about why the Yates Property was not included in the schedules, Mr. Sanders stated, "it slipped [his] mind"; Ms. Sanders stated that she "didn't doublecheck to see that it wasn't on there"; and Goldstein Law stated that it was "completely inadvertent" and would be corrected promptly. The Trustee continued the § 341 meeting to allow the Sanders to amend their schedules and provide several requested documents.

At the continued § 341 meeting, the Trustee noted frustration with the Sanders's failure to amend their schedules to reflect the ownership of the Yates Property. The Trustee then questioned the Sanders about other omitted assets. First, the Trustee queried the Sanders about undisclosed tax refunds—a 2021 refund of $7,308.63 (the "2021 Refund") and a 2022 refund of $15,727.76 (the "2022 Refund"). Mr. Sanders indicated that he received

4

the 2021 Refund "months ago" and "already started spending it." Mr. Sanders was noncommittal as to the receipt of the 2022 Refund. The Trustee asked Goldstein Law for copies of the Sanders's 2021 and 2022 tax returns and copies of the specific bank statements where the tax refunds were deposited. The Trustee told the Sanders to "stop spending" the refunds and directed the Sanders to turn over the refunds to the bankruptcy estate. The Trustee also requested documents related to the bank account for Pinole which were not included in the schedules and any other undisclosed bank accounts.[3]

### 2.    The amended schedules.

The Sanders filed their first amended schedules on October 3, 2023. In their first amended schedules the Sanders disclosed the Yates Property (which they valued at $160,000), their Personal Account, bank account x8049 (which they stated they held for their child), and the 2021 Refund which was received the day after the Sanders filed the Current Case. The Sanders deposited the 2021 Refund into their previously undisclosed Personal Account.

The Sanders filed their second amended schedules on October 16, 2023. The second amended schedules disclosed their interest in TAC, the x3103 TAC Account, and the 2022 Refund which was deposited into the

---

[3] The § 341 meeting was continued seven more times (to September 8, October 20, October 31, November 9, November 22, January 9, and January 23), until finally concluded on February 20, 2024.

TAC Account on July 5, 2023 (before the first § 341 meeting of creditors).

The Trustee eventually sold the Yates Property for $229,000.

**D.    The United States Trustee's complaint to deny the Sanders's discharge under § 727(a)(2)(B) and (a)(4)(A).**

In December 2023, the United States Trustee ("UST") filed a complaint to deny the Sanders's discharges under §§ 727(a)(2)(B) and (a)(4)(A) based on their multiple failures to disclose assets in their initial schedules.

The Sanders's generally denied all allegations on the basis of "insufficient information or knowledge." Soon after answering the complaint, the Sanders filed a motion for summary judgment. The Sanders argued that their omissions were not intentional, rather they were due to mistake or inadvertence. Because they lacked the requisite intent, the Sanders argued there was an insufficient basis to deny their discharges pursuant to § 727(a)(2)(B) or (a)(4)(A).

The UST opposed the Sanders's summary judgment motion. According to the UST, although the Sanders disclosed all of their assets in the Prior Bankruptcy Case, they "only disclosed 45.3% of their assets" in the Current Case "while still capturing 100% of their liabilities." The UST argued there remained genuine disputes of material fact as to whether the omissions were intentional. The UST argued that facts demonstrated that the omissions were intentional because the Sanders's omissions hid valuable assets. The UST asserted that to conceal the Yates Property, worth

6

$229,000, the Sanders did not disclose it on their Schedule A/B, did not disclose related expenses on Schedule J, did not disclose their ownership of TAC, the entity that paid the expenses, or the TAC Account through which expenses related to the Yates Property were paid. To conceal the receipt of the two tax refunds, the UST asserted that the Sanders purposely deposited the refunds into undisclosed bank accounts which they had never previously used for any tax refund deposits.

The bankruptcy court denied the Sanders's motion for summary judgment and held a one-day trial in May 2025.

### E.    Denial of discharge trial.

Prior to trial, the UST filed two motions in limine. The first motion asserted that during discovery, the Sanders did not disclose any documents or witnesses. The UST requested that consequently, pursuant to the applicable rules of civil procedure, the Sanders be precluded from introducing any other documents or witnesses.

The second motion sought to preclude the Sanders from asserting advice or mistake of counsel as a defense. The UST alleged that he had served the Sanders with an "entire set of discovery aimed at understanding any defense that Defendants may have regarding advice of counsel or mistake of counsel." The Sanders responded that the information requested was protected under attorney-client privilege. The UST argued that in the Ninth Circuit, if the Sanders wanted to rely on advice of counsel as a defense, they waived the attorney-client privilege as to communications

7

and documents relating to the advice.[4] Given that the Sanders had not provided the requested discovery information, the UST sought an order precluding the Sanders from testifying or presenting documents asserting the defense of advice of counsel or mistake of counsel.

At the start of trial, Ms. Sanders, representing herself and Mr. Sanders, stated that they did not oppose the court granting the UST's motions. Ms. Sanders assured the court that they did not intend to raise reliance on counsel as a defense and did not intend to introduce any documents or witnesses. The bankruptcy court granted the UST's motions.

Despite their previous assurances that mistake of counsel was not their defense, during the trial, both Mr. and Ms. Sanders repeatedly blamed their counsel for the omissions.[5] The bankruptcy court struck their

---

[4] UST cited *Chevron Corp. v. Pennzoil Co.*, 974 F.2d 1156, 1162 (9th Cir. 1992) and *Chiron Corp. v. Genentech, Inc.*, 179 F. Supp. 2d 1182, 1186 (E.D. Cal. 2001).

[5] For example, Mr. Sanders testified: "all I do is provide documents that's [sic] requested from the attorney"; "I don't fill out this stuff. I just give [counsel] documents, whatever they were asking me for"; "I submit my documents . . . to the attorney, so I never questioned the fact of the accuracy or inaccuracy, because I don't — that's what they're [the attorney] there for, to put the information in . . .  I just go with what they ask me and I give it to them and move on"; "I rely on my attorney to whatever accuracy or whatever the issues, that I never had a problem with them before, so my assumption is he'd be there doing what he's supposed to"; "I provide my information to the attorney. They fill this stuff out."; and "I don't fill out the petition . . .  whatever documents were requested, I provided, and I relied on the attorney to complete it. What they do with it, I don't know."

Ms. Sanders similarly attempted to deflect blame to her attorney despite assurances that this was not their defense. She testified "I believed that the Yates property had been disclosed in the questionnaire that was provided to my attorney" and that "when the document comes from my attorney's office, I'm looking at it on my phone, I'm scrolling through, and I don't see everything. That's how I missed it." In

testimony attributing the errors and omissions to their counsel.

The Sanders also asserted the omissions were not intentional but rather a result of carelessness and failure to carefully review the petition. During direct examination, the UST challenged this assertion. The UST emphasized that the Sanders were ultimately responsible for the accuracy of the petition and schedules and that by signing the petition under penalty of perjury, they attested that they had reviewed the information, and the information was true and accurate. Initially, both Mr. and Ms. Sanders attempted to disavow such responsibility by claiming that they had not signed the petition, specifically contradicting their § 341 testimony. Ms. Sanders stated, "I don't see a wet signature here, so I don't recall what was signed." Mr. Sanders asserted he saw no "wet signature," and therefore he had not signed the petition. Later, Mr. Sanders took the position that regardless, even if he signed the petition, his signature had little meaning, even when signed under penalty of perjury. Mr. Sanders argued "we signed [sic] that casually every day. Americans do, we — just . . . do." The bankruptcy court noted the cavalier response, stating "we sign under penalty of perjury in a casual way? That's an intriguing answer."

Finally, the Sanders argued that they should not be denied a

---

explaining why the TAC Account was not listed, she stated, "I completed or provided the information to my attorney, . . . I don't know why it wasn't listed" and as to the omitted tax refunds, she testified "I don't recall ever being asked information about [the tax refunds]" and "I did not review this as well as I should have."

discharge because the omitted assets had little value and thus, were not material. Mr. Sanders asserted that TAC was not listed because it produced no income and the TAC Account was not listed because the account did not have a "substantial amount of money in it" and it was just used to pay bills for ease of accounting. The Sanders continued to assert that the Yates Property had little value (despite the $229,000 sale price) and argued that Mr. Sanders forgot about the property because he was focused on the stressful process of closing Pinole.

**F.    Bankruptcy court's order denying discharge.**

In August 2025, after post-trial briefing, the bankruptcy court issued an oral ruling denying the Sanders's discharges under both § 727(a)(4) and § 727(a)(2)(B). At the outset the court found that the Sanders failed to disclose the Yates Property, the Personal Account, the TAC Account, the 2021 Refund, the 2022 Refund, and their interest in TAC.

With respect to the UST's claim under § 727(a)(4)(A), the bankruptcy court explained that "[f]raudulent intent may be inferred from circumstantial evidence and badges of fraud, including a pattern of nondisclosure, inconsistent explanations, and failure to amend until prompted."

The bankruptcy court found that the Sanders's schedules had "extensive omissions, covering multiple categories of property, including real property, multiple bank accounts, two LLC interests, and tax refunds totaling over $23,000." Specifically, the bankruptcy court found that: (i) the

10

Sanders's made false oaths by signing that their schedules and statements were true, accurate, and complete, under penalty of perjury, despite knowing the documents contained multiple omissions; (ii) the Sanders's omissions were material because they related directly to the existence, disposition, or recovery of estate property; and (iii) the Sanders's false oaths were made both knowingly and fraudulently. The court further found the Sanders's conduct aligned with recognized badges of fraud, "including concealment of assets, failure to disclose assets until confronted, and implausible explanations." Based on the evidence and its factual findings, the bankruptcy court denied the Sanders's discharge pursuant to § 727(a)(4).

The bankruptcy court also denied the Sanders's discharge under § 727(a)(2)(B). The court found that: (i) the Sanders received and deposited the 2021 and 2022 Refunds into "accounts the debtors concealed in their original filings"; (ii) those funds were "unquestionably property of the estate"; (iii) the "refunds were substantial assets"; (iv) "portions of those funds were spent by the debtor"; and (v) the Sanders acted with "intent to hinder, delay, or defraud the Trustee and creditors." The court reasoned that the Sanders's decision to deposit the tax refunds into "concealed accounts" was intentional because it "ensured that the Trustee would not discover them without independent investigation."

The bankruptcy court entered a judgment consistent with its oral ruling ("Discharge Denial Order").

11

The Sanders timely appealed the Discharge Denial Order.

## JURISDICTION

The bankruptcy court had jurisdiction under 28 U.S.C. §§ 1334 and 157(b)(2)(J). We have jurisdiction under 28 U.S.C. § 158.

## ISSUES

Whether the bankruptcy court erred in denying Mr. Sanders's and Ms. Sanders's discharge pursuant to § 727(a)(4)(A).

Whether the bankruptcy court erred in denying Mr. Sanders's and Ms. Sanders's discharge pursuant to § 727(a)(2)(B).

## STANDARDS OF REVIEW

In an appeal from a denial of discharge under § 727, we review: (1) the bankruptcy court's legal conclusions de novo, (2) factual findings for clear error, and (3) mixed questions of law and fact de novo. *Searles v. Riley (In re Searles)*, 317 B.R. 368, 373 (9th Cir. BAP 2004), *aff'd*, 212 F. App'x 589 (9th Cir. 2006). Under § 727(a)(4)(A), whether a debtor made a false oath, whether the false statements were material, and whether the debtor had the requisite fraudulent intent are all questions of fact reviewed under the clearly erroneous standard. *Retz v. Samson (In re Retz)*, 606 F.3d 1189, 1197 (9th Cir. 2010). Factual findings are clearly erroneous if they are illogical, implausible, or without support in the record. *Id.* at 1196.

Under de novo review, "we consider a matter anew, as if no decision had been made previously." *Francis v. Wallace (In re Francis)*, 505 B.R. 914, 917 (9th Cir. BAP 2014).

12

"Where there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous." *Anderson v. City of Bessemer City*, 470 U.S. 564, 574 (1985).

**DISCUSSION**

The bankruptcy court denied Mr. Sanders and Ms. Sanders a discharge under two independent grounds: § 727(a)(4)(A) and (a)(2)(B). Because the provisions of § 727(a) are phrased in the disjunctive, the Panel must affirm unless the Sanders can demonstrate error under both of the court's bases for denying the Sanders's discharge. *See Farouki v. Emirates Bank Int'l, Ltd.*, 14 F.3d 244, 250 (4th Cir. 1994).

"Bankruptcy's fresh start comes at the cost of actually filing a bankruptcy petition, turning one's assets over to the court and repaying debts that can be paid." *Leonard v. St. Rose Dominican Hosp. (In re Majewski)*, 310 F.3d 653, 656 (9th Cir. 2002). Inherent in this proposition is the debtor's duty to prepare the petition, statements, and schedules carefully, completely, and accurately. *Cusano v. Klein*, 264 F.3d 936, 945-46 (9th Cir. 2001). Should a debtor knowingly make a fraudulent statement or omission in these items, or intentionally conceal assets from the trustee, the debtor's discharge may be denied. *Khalil v. Devs. Sur. & Indem. Co. (In re Khalil)*, 379 B.R. 163, 171-72 (9th Cir. BAP 2007) (citing statutory text), *aff'd*, 578 F.3d 1167 (9th Cir. 2009). A claim for denial of discharge under § 727(a) is construed liberally in favor of the discharge and strictly against a person

13

objecting to the discharge. *First Beverly Bank v. Adeeb (In re Adeeb)*, 787 F.2d 1339, 1342 (9th Cir. 1986).

## A. The bankruptcy court did not err in denying Mr. Sanders and Ms. Sanders a discharge pursuant to § 727(a)(4)(A).

### 1. Legal standard under § 727(a)(4)(A).

Section 727(a)(4) denies discharge to a debtor who "knowingly and fraudulently, in or in connection with the case . . . made a false oath or account[.]" "The fundamental purpose of § 727(a)(4)(A) is to ensure that the trustee and creditors have accurate information without having to conduct costly investigations." *Fogal Legware of Switz., Inc. v. Wills (In re Wills)*, 243 B.R. 58, 63 (9th Cir. BAP 1999) (citation omitted).

To prevail on a § 727(a)(4) claim, the plaintiff must prove: "(1) the debtor made a false oath in connection with the case; (2) the oath related to a material fact; (3) the oath was made knowingly; and (4) the oath was made fraudulently." *In re Retz*, 606 F.3d at 1197 (citation omitted).

### 2. The record supports the bankruptcy court's factual findings demonstrating that the Sanders knowingly and fraudulently made false oaths.

#### i. False oath

The bankruptcy court determined that the UST established all elements of its § 727(a)(4) claim. First the bankruptcy court found that the Sanders's omissions qualified as a false oath. "'A false statement or an omission in the debtor's bankruptcy schedules or statement of financial affairs can constitute a false oath'" for purposes of § 727(a)(4)(A). *In re Retz*,

14

606 F.3d at 1196 (quoting *In re Khalil*, 379 B.R. at 172); *see also In re Searles*, 317 B.R. at 378 ("The continuing nature of the duty to assure accurate schedules of assets is fundamental because the viability of the system of voluntary bankruptcy depends upon full, candid, and complete disclosure by debtors of their financial affairs.").

Here, the Sanders jointly filed the bankruptcy case, and both signed the petition. We agree with the bankruptcy court that the Sanders's petition and schedules contained "extensive omissions, covering multiple categories of property, including . . . the Yates [P]roperty, multiple bank accounts, two LLC interests, and tax refunds totaling over $23,000." Testimony during trial demonstrated that both Mr. Sanders and Ms. Sanders had knowledge of each omitted asset.

Thus, the bankruptcy court's determination that both Mr. and Ms. Sanders made false oaths by failing to disclose all assets is supported by the record.

### ii. Material

Next, the bankruptcy court determined that the omissions were material, rejecting the Sanders's argument that the omitted assets were of little value and therefore, not material. The Sanders argue that this was error. We disagree.

"A fact is material if it bears a relationship to the debtor's business transactions or estate, or concerns the discovery of assets, business dealings, or the existence and disposition of the debtor's property." *In re*

*Retz*, 606 F.3d at 1198 (citations and quotation marks omitted). "A false statement or omission may be material even if it does not cause direct financial prejudice to creditors." *In re Khalil*, 379 B.R. at 177 (citation omitted). Our bankruptcy system does not allow debtors to decide for themselves which assets they believe have sufficient value for an estate such that they should be disclosed in their bankruptcy case. A debtor's duty is that of full and accurate disclosure. *See Searles*, 317 B.R. at 378. Thus, "[e]ven if the debtor can show that the assets were of little value or that a . . . truthful answer would not have directly increased the estate assets, a discharge may be denied if the omission adversely affects the trustee's . . . ability to discover other assets." *In re Wills*, 243 B.R. at 63 (citation modified). If debtors were allowed the discretion to not report exempt or worthless property, they would "usurp[ ] the role of the trustee, creditors, and the court." *Garcia v. Coombs (In re Coombs)*, 193 B.R. 557, 566 (Bankr. S.D. Cal. 1996).

Here, the record belies the Sanders's repeated assertions that the omitted assets were not material. Indeed, after discovery of the omitted assets, the Trustee was able to generate over $200,000 in estate funds for the benefit of creditors. Thus, the bankruptcy court did not commit error in finding that undisclosed assets were "neither trivial nor de minimis" and the Sanders's false oaths were material.

### iii. Knowingly

The bankruptcy court found the omitted assets were strategic and

16

intentional and therefore made knowingly. "A debtor acts knowingly if he or she acts deliberately and consciously." *In re Retz*, 606 F.3d at 1198 (citation modified). "[T]he debtor has a duty to prepare schedules carefully, completely, and accurately." *Cusano*, 264 F.3d at 946 (citations omitted). "To ensure complete candor, a debtor is required to sign the bankruptcy petition and schedules under penalty of perjury. That oath must be regarded as serious business." *U.S. Tr. for Region 16 v. Meeks (In re Meeks)*, No. 2:19-BK-23548-RK, 2023 WL 357354, at *33 (Bankr. C.D. Cal. Jan. 20, 2023) (citation modified).

The Sanders continue to assert that their omissions were careless, not intentional. Therefore, according to the Sanders, they did not have the requisite intent. The bankruptcy court rejected this argument; this was not error.

The bankruptcy court reasoned that multiple assets covering several categories of property were omitted and that such omissions "demonstrate[d] more than inadvertence or mistake." The bankruptcy court found that the Sanders's testimony that the omissions were a result of forgetfulness or carelessness was not credible and was not consistent with the record presented. We typically give great deference to the bankruptcy court's determination of witness credibility. *See Cooper v. Harris*, 581 U.S. 285, 309 (2017) ("we give singular deference to a trial court's judgments about the credibility of witnesses . . . because the various cues that bear so heavily on the listener's understanding of and belief in what is said are lost

17

on an appellate court later sifting through a paper record." (citation modified)).

Because the record supports the bankruptcy court's findings that both Mr. Sanders and Ms. Sanders knowingly made false oaths, the bankruptcy court's findings are not clearly erroneous.

### iv. Fraudulent intent

Finally, the bankruptcy court found the omitted assets were a result of the Sanders's fraudulent intent. Fraudulent "[i]ntent is usually proven by circumstantial evidence or by inferences drawn from the debtor's conduct." *In re Retz*, 606 F.3d at 1199 (citing *Devers v. Bank of Sheridan (In re Devers)*, 759 F.2d 751, 753-54 (9th Cir. 1985)) "Reckless indifference or disregard for the truth may be circumstantial evidence of intent, but is not sufficient, alone, to constitute fraudulent intent." *Id.* at 1199 (citing *In re Khalil*, 379 B.R. at 173-75). But "the existence of more than one falsehood, together with a debtor's failure to take advantage of the opportunity to clear up all inconsistencies and omissions, such as when filing amended schedules, can be found to constitute reckless indifference to the truth satisfying the requisite finding of intent to deceive." *In re Khalil*, 379 B.R. at 175 (citation omitted).

Here, the bankruptcy court explained that the discharge is an "amazing thing," but the bankruptcy system "fundamentally" requires the debtor to "be absolutely transparent" and fully disclose all assets. The bankruptcy court explained that the bankruptcy system would "crater" if

18

debtors do not tell the truth and "trustees have to chase people and have to corner them to get further explanation and complete disclosure."

The bankruptcy court found that the Sanders, rather than being transparent, engaged in a pattern of willful omissions calculated to hide valuable assets from the Trustee and creditors. The court found that the Sanders concealed the two tax refunds by depositing them into undisclosed bank accounts in which they had never previously deposited a tax refund. The Yates Property was hidden by not disclosing the property itself and the account that was used for expenses related to the property. Additionally, the bankruptcy court found that fraudulent intent was demonstrated by the Sanders's failure to amend their schedules until directed by the Trustee and that ultimately, the full picture of the Sanders's assets was not revealed until after multiple schedule amendments and several continued § 341 meetings. Consequently, the bankruptcy court determined that when "[v]iewed cumulatively, the pattern of nondisclosure, inconsistent explanations, and delayed amendments, supports a finding that the omissions were indeed knowing and fraudulent." The bankruptcy court's findings are not clearly erroneous.

Based on the foregoing, the bankruptcy court applied the correct law, and its factual findings are not illogical and are supported by the record. Accordingly, the bankruptcy court did not err in denying Mr. and Ms. Sanders a discharge pursuant to § 727(a)(4)(A).

**B. The bankruptcy court did not err in denying Mr. Sanders and Ms. Sanders a discharge pursuant to § 727(a)(2)(B).**

**1. Legal standard under § 727(a)(2)(B).**

Section 727(a)(2)(B) provides that a debtor shall not be granted a discharge if "the debtor, with intent to hinder, delay, or defraud . . . an officer of the estate . . . has transferred, removed, destroyed, mutilated, or concealed . . . property of the estate, after the date of the filing of the petition." § 727(a)(2)(B). "Under the plain language of § 727(a)(2)(B), intent to hinder, intent to delay, and intent to defraud will each, independently, suffice under § 727(a)(2)(B) for discharge denial." *In re Searles*, 317 B.R. at 379. Whether a debtor harbors intent to hinder, or to delay, or to defraud an officer of the estate is a question of fact for the bankruptcy court. *Id.* The bankruptcy court can rely on circumstantial evidence or inferences drawn from a course of conduct such as a pattern of falsity or cumulative falsehoods. *See In re Devers*, 759 F.2d at 753-54.

**2. The record supports the bankruptcy court's factual finding that post-petition the Sanders intentionally concealed property of the estate.**

In their reply brief the Sanders argue, essentially for the first time, that the bankruptcy court erred because there is insufficient evidence of Ms. Sanders's intent to conceal property of the estate post-petition.[6] We

---

[6] The Sanders did not make this argument in their opening brief. Further, the Sanders did not make this argument to the bankruptcy court despite the bankruptcy court specifically inviting the parties to address the issue in a post-trial brief. At the

disagree.

The bankruptcy court found that both Mr. and Ms. Sanders were aware of receiving two tax refunds, the 2021 Refund ($7,308.83) and the 2022 Refund ($15,727.76), and both had access to the bank accounts where the refunds were deposited. The bankruptcy court also found that although the tax returns were received post-petition, the Sanders were entitled to the refunds prior to the commencement of the case, and thus the refunds were "unquestionably property of the estate." The bankruptcy court further found that the refunds were substantial assets and portions of the refunds were spent by the Sanders. Finally, the bankruptcy court found that by depositing the refunds into concealed accounts, the Sanders ensured that the "Trustee would not discover them without independent investigation."

The bankruptcy court's findings are supported by the record and are sufficient to establish intent as to both Mr. and Ms. Sanders. California is a community property state, and property acquired during the marriage is presumed to be community property. *See* Cal. Family Code § 760.

---

close of testimony, the bankruptcy court invited the parties to provide post-trial briefs addressing two issues: (1) "the court's appropriate findings and conclusions on the inferences with respect to the intent necessary to find liability under 727(a)(2) and (a)(4)"; and (2) whether there is a different degree of liability "as between Mr. Sanders and Ms. Sanders with respect to liability under [§] 727(a)(2) or (a)(4)." Although the Sanders filed a post-trial brief, they failed to fully address the two issues. Indeed, the Sanders devoted only a couple of sentences to the bankruptcy court's second issue, merely asserting that "[f]raudulent intent will not be imputed from one spouse to the other in the absence of a business relationship." Beyond the conclusory statement, the Sanders provided no cognizable legal argument or legal authority in support.

Consequently, the tax returns were community property, regardless of who deposited the returns. Thus, there is no support for the Sanders's assertion that Ms. Sanders did not share the responsibility to disclose and turnover the refunds merely because she was not the one to deposit either of the tax refunds. "A debtor cannot, merely by playing ostrich and burying his head deeply enough in the sand, disclaim all responsibility for statements which he has made under oath." *In re Retz*, 606 F.3d at 1199 (citation modified).

Based on the record, we agree with the bankruptcy court that both Mr. Sanders and Ms. Sanders intended to conceal post-petition recoverable assets. Because the bankruptcy court's findings of fact are supported by the record and we perceive no error in its application of the findings to the law, the bankruptcy court did not err in denying Mr. and Ms. Sanders a discharge under § 727(a)(2)(B).

## CONCLUSION

Based upon the foregoing, we AFFIRM.