NOT FOR PUBLICATION

**UNITED STATES BANKRUPTCY APPELLATE PANEL**

**OF THE NINTH CIRCUIT**

| | |
|---|---|
| In re: | BAP No.   CC-12-1344-TaPaKi |
| DAVID BRUCE KLUGE, | Bk. No.   10-29300-BB |
| Debtor. | Adv. No.  10-03019-BB |
| DAVID BRUCE KLUGE, | |
| Appellant, | |
| v. | **MEMORANDUM**[*] |
| RHI/10223 SEPULVEDA, LLC; ROSENDO GONZALEZ, Chapter 7 Trustee; UNITED STATES TRUSTEE, | |
| Appellees. | |

Argued and Submitted on March 22, 2013
at Pasadena, California

Filed - April 10, 2013

Appeal from the United States Bankruptcy Court
for the Central District of California

Honorable Sheri Bluebond, Bankruptcy Judge, Presiding

Appearances:    Benjamin M. Hill of METAL Law Group, LLP on behalf
of Appellant David Bruce Kluge and Alan F. Broidy
of Law Office of Alan F. Broidy, APC on behalf of
Appellee RHI/10223 Sepulveda, LLC.

Before:  TAYLOR, PAPPAS, and KIRSCHER, Bankruptcy Judges.

[*] This disposition is not appropriate for publication. Although it may be cited for whatever persuasive value it may have (see Fed. R. App. P. 32.1), it has no precedential value. See 9th Cir. BAP Rule 8013-1.

1

## INTRODUCTION

Debtor and Appellant David Bruce Kluge ("Kluge") appeals from the bankruptcy court's order denying him a discharge under 11 U.S.C. § 727(a)(4)(A).[1]  We AFFIRM.

## FACTS

Kluge filed a voluntary chapter 7 bankruptcy petition on May 14, 2010.  He filed his original schedules and statement of financial affairs ("SOFA") the next day.  On his Schedule B, Kluge listed ownership of 1,000 shares in Affirm Direct, Inc. ("Affirm Direct") with an "unknown" value.  On his Schedule I, he disclosed that he was President of Affirm Direct.  He, however, did not disclose any income from Affirm Direct in his schedules, and he listed his income for all relevant pre-petition periods as $0.01 per year and his current income as -0-.  Kluge did disclose that his wife, who was not a joint debtor, was employed by Meggitt-USA, Inc. and earned a monthly net salary of $6,542.39.

Shortly after the bankruptcy filing, creditor RHI/10223 Sepulveda, LLC ("RHI")[2] moved for and obtained an order from the bankruptcy court allowing a Rule 2004 examination of Kluge (the "Rule 2004 Examination").  RHI conducted the Rule 2004 Examination on September 21, 2010.

On November 5, 2010, RHI initiated an adversary proceeding

---

[1] Unless otherwise indicated, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532. "Rule" references are to the Federal Rules of Bankruptcy Procedure.

[2] Kluge previously entered into a commercial lease agreement with RHI's predecessor-in-interest.  The deal went sour, and RHI sued Kluge and Kluge's sub-lessee in state court.

against Kluge seeking to bar his discharge under § 727(a)(4).[3] In its complaint, RHI alleged that Kluge's petition and schedules contained a number of inaccuracies and omissions, including an intentional failure to list creditors and assets. In particular, RHI alleged that Kluge failed to account for income received from Affirm Direct or to properly account for the nature and value of his shares in the corporation. It also alleged that Kluge caused Affirm Direct to transfer money into his wife's personal bank account and that Kluge and his wife utilized these distributions for personal and household expenses.

The bankruptcy court scheduled a trial for May 23, 2012. Prior to trial, it entered a stipulated Joint Pre-Trial Order ("PTO"). The PTO established certain admitted facts, including that Kluge listed his monthly income as $0 on his Schedule I and that he listed his earnings as $0.01 for the years 2008, 2009, and 2010 on his SOFA. The PTO also established that Kluge and his wife owned Affirm Direct and that each held a 50% ownership interest in the corporation; that at his Rule 2004 Examination, Kluge testified that the transfers to his wife were income; that the transfers were for household expenses; and that the amount transferred each month to his wife was approximately $2,000. In addition, the PTO identified the remaining facts and legal issues[4] to be litigated at trial.

The bankruptcy court held a one-day trial on May 23, 2012.

---

[3] RHI also objected to Kluge's discharge under §§ 727(a)(2), 727(a)(3), and 727(a)(5).

[4] The PTO identified §§ 727(a)(4) and (a)(5) as the sole issues of law that remained to be litigated.

It began the proceeding by narrowing the disputed factual and legal issues to be tried.[5] The bankruptcy court then heard testimony, primarily from Kluge, but also from Kluge's wife.

As to his scheduled valuation of Affirm Direct, Kluge testified that he discussed the value of Affirm Direct with his bankruptcy counsel[6] prior to filing bankruptcy and that, based on those discussions, he was under the impression that because the corporation was unprofitable, he was not required to assign it any value on the schedules. As to money received from Affirm Direct, he gave facially inconsistent testimony. First, he denied any receipt of pre-petition salary from Affirm Direct. But, he acknowledged that the corporation transferred funds to his wife's account upon his request. Kluge during his testimony discussed these payments as a return on investment. He explained that he invested working capital into Affirm Direct when he started the corporation and continued to do so over the years. He testified that, according to his bookkeeper, between 2003 and 2009, he intermittently invested approximately $280,000 into Affirm Direct. Kluge stated that his bookkeeper advised him

---

[5] The bankruptcy court determined that most of the disputed factual issues identified by Kluge were irrelevant to the legal issues before it. It then narrowed the legal issues as arising only under § 727(a)(4)(A). In doing so, the bankruptcy court concluded that it would not consider the § 727(a)(5) claim, because it did not apply under the circumstances. Ultimately, the bankruptcy court entered judgment in favor of RHI on the § 727(a)(4)(A) claim, and judgment in favor of Kluge on all other claims.

[6] Kluge was represented by different counsel in the adversary proceeding.

that, after deducting the $2,000 monthly transfers to his wife from the $280,000, his net unrecovered investment was approximately $53,000.

Kluge, however, also characterized the distributions as loan repayments. He testified that Affirm Direct booked these investments as a "loan from officer," but acknowledged that he previously (and erroneously) characterized the transactions during the bankruptcy proceedings as a "loan to officer." Kluge further testified that he did not consider these transfers to be income, because it was his own money and because the corporation booked the transfers as a loan. But Kluge subsequently testified that he omitted the loans that Affirm Direct allegedly owed him on his Schedule B, because he "didn't think about it as a loan." Trial Tr. (May 23, 2012) at 87:16.

At the close of argument, the bankruptcy court announced an oral ruling on the record. It discussed three potential false oaths that possibly gave rise to denial of discharge, but concluded that RHI had not met its burden on two of the three potential misstatements. The bankruptcy court then focused on the issue of the omitted monthly distributions from Affirm Direct and found that Kluge's testimony attempting to excuse his failure to disclose these payments was not credible. The bankruptcy court based this conclusion on its determination that there were numerous inconsistencies in Kluge's testimony at his Rule 2004 Examination[7] and in his testimony at trial and on its observation

---

[7] At trial, the bankruptcy court read a portion of Kluge's testimony into the record that it identified as testimony from
(continued...)

5

of Kluge's demeanor during his testimony.

The bankruptcy court noted that at his Rule 2004 Examination, Kluge acknowledged that the omitted income was income to his wife, but not income to him. In contrast, the bankruptcy court found that Kluge's testimony at trial was vague and inconsistent. The bankruptcy court, therefore, determined that the omitted monthly transfers were income, that Kluge should have disclosed this income on his Schedule I and SOFA, and that his failure to disclose this income was not justified. The bankruptcy court, thus, concluded that Kluge knowingly and fraudulently made a false oath in his case and that this warranted denial of discharge.

On June 19, 2012, the bankruptcy court entered a judgment denying Kluge's discharge under § 727(a)(4)(A). Kluge timely appealed.

### JURISDICTION

The bankruptcy court had jurisdiction pursuant to 28 U.S.C. §§ 1334 and 157(b)(2)(J). We have jurisdiction under 28 U.S.C. § 158.

### ISSUE

Did the bankruptcy court err when it denied Kluge a discharge under § 727(a)(4)(A)?

### STANDARD OF REVIEW

In an action for denial of discharge, we review: (1) the

[7](...continued) his § 341(a) meeting. It is likely, however, that the bankruptcy court meant Kluge's Rule 2004 Examination; the parties referred to the Rule 2004 Examination during the trial and parts of Kluge's Rule 2004 Examination were admitted into evidence.

6

bankruptcy court's determinations of the historical facts for clear error; (2) its selection of the applicable legal rules under § 727 de novo; and (3) its application of the facts to those rules requiring the exercise of judgments about values animating the rules de novo. <u>Searles v. Riley (In re Searles)</u>, 317 B.R. 368, 373 (9th Cir. BAP 2004) (citation omitted), <u>aff'd</u>, 212 Fed.Appx. 589 (9th Cir. 2006).

Factual findings are clearly erroneous if illogical, implausible, or without support in the record. <u>Retz v. Samson (In re Retz)</u>, 606 F.3d 1189, 1196 (9th Cir. 2010) (citation omitted). We give great deference to the bankruptcy court's findings when they are based on its determinations as to the credibility of witnesses. <u>Id.</u> (noting that as the trier of fact, the bankruptcy court has "the opportunity to note variations in demeanor and tone of voice that bear so heavily on the listener's understanding of and belief in what is said.") (citation and quotation marks omitted).

### DISCUSSION

Section 727 provides that a court must grant the debtor a discharge unless, among other things, the debtor knowingly and fraudulently makes a false oath or account in the bankruptcy case or in connection with the case. 11 U.S.C. § 727(a)(4)(A). It is well established that a fundamental purpose of § 727(a)(4)(A) is to incentivize a debtor to provide the trustee and creditors with accurate information so that they do not need to conduct costly investigations. <u>Fogal Legware of Switz., Inc. v. Wills (In re Wills)</u>, 243 B.R. 58, 62 (9th Cir. BAP 1999) (citation omitted). A claim for denial of discharge under § 727(a)(4)(A),

7

however, is liberally construed in favor of the debtor and against the objector to discharge. Roberts v. Erhard (In re Roberts), 331 B.R. 876, 882 (9th Cir. BAP 2005) (citation omitted). The objector bears the burden to prove by a preponderance of the evidence that the debtor's discharge should be denied under § 727(a)(4)(A). Khalil v. Developers Sur. and Indem. Co. (In re Khalil), 379 B.R. 163, 172 (9th Cir. BAP 2007), aff'd, 578 F.3d 1167 (9th Cir. 2009) (citation omitted).

**A.  The Bankruptcy Court Did Not Err When It Denied Kluge's Discharge Pursuant to § 727(a)(4)(A).**

To obtain a denial of discharge under § 727(a)(4)(A), the objector must show that: (1) the debtor made a false oath in connection with the case; (2) the oath related to a material fact; (3) the oath was made knowingly; and (4) the oath was made fraudulently. In re Retz, 606 F.3d at 1197 (citation omitted).

### *1.  False Oath*

A false statement or omission in the debtor's schedules or statement of financial affairs may constitute a false oath for the purposes of § 727(a)(4)(A). In re Khalil, 379 B.R. at 172; In re Wills, 243 B.R. at 62. Here, the bankruptcy court found that Kluge omitted the monthly Affirm Direct distributions to his wife from his Schedule I and SOFA. Kluge does not dispute that he omitted this information. This is sufficient to establish a false oath. See In re Searles, 317 B.R. at 377 ("A false oath is complete when made."). Thus, the bankruptcy court did not err in finding that Kluge made a false oath when he executed and filed his Schedule I and SOFA.

8

### 2. *Materiality*

Kluge focuses the majority of his argument on appeal on the alleged immateriality of his omission of the Affirm Direct income. He argues that the bankruptcy court erred when it determined that the income was material without first making other findings. Kluge contends that, pursuant to In re Wills, the bankruptcy court was required first to determine whether the income was property of the estate or whether his omission of the income detrimentally affected the administration of the estate.

At oral argument, Kluge asserted that the record was unclear on what standard the bankruptcy court applied in determining materiality. To the extent the bankruptcy court applied the materiality test set forth in In re Khalil, Kluge argued that it was erroneous to do so because In re Khalil involved assets of the estate and, thus, did not apply because the omitted income was not an asset of the estate.

In response, RHI argues that Kluge's failure to disclose the income affected administration of the estate, and counters that the bankruptcy court was not required to first determine whether it was property of the estate. It maintains that income is never property of the estate, and, thus, that Kluge's reliance on In re Wills, which involved assets of the estate rather than income, is misplaced.

Kluge, and to some extent RHI, misinterpret the standard for materiality. Whether a fact is material is broadly defined: "[a] fact is material if it bears a relationship to the debtor's business transactions or estate, or concerns the discovery of assets, business dealings, or the existence and disposition of

9

the debtor's property." <u>In re Khalil</u>, 379 B.R. at 173 (citation omitted). While the standard for materiality does not expressly refer to "income," it is sufficiently broad such that it may encompass income based on the particular circumstances in a case. <u>See id.</u> at 177 (observing that non-disclosure of information such as creditors and debts is also important because "[i]nformation regarding business and personal dealings can lead to discovery of assets, potentially avoidable transfers, or other relevant information such as grounds to deny a debtor's discharge.").

Here, although the bankruptcy court did not explicitly state the standard for materiality, the record supports the bankruptcy court's determination that Kluge's omission was material. First, the record shows that the monthly transfers constituted income from Kluge's corporation and that Kluge previously acknowledged that it was income. Second, the income clearly bore a connection to Kluge's business dealings and the existence of property, including the alleged loans and investments made to Affirm Direct. Had Kluge properly disclosed the alleged loans or income, it would have allowed for a prompt investigation as to potential assets. The fact that Affirm Direct may have owed Kluge thousands of dollars or had the ability to transfer thousands of dollars is significant. And the monthly payments to his wife were significant in amount. Kluge, in fact, acknowledged at oral argument that the amount of the monthly transfers were not a de minimis amount in proportion to his wife's monthly income from her employment.

Moreover, the bankruptcy court's determination of materiality was linked to its conclusion that Kluge was not

10

candid about the nature of the monthly transfers. It considered the evidence presented and found that Kluge's testimony was not credible, based on his demeanor at trial and several inconsistencies in his testimony within the trial itself and at his Rule 2004 Examination. The bankruptcy court determined that Kluge knew that the transfers were income from his corporation, which he should have scheduled but instead omitted. The bankruptcy court's determinations are supported by the record, and we emphasize that we give great deference to the bankruptcy court's determination as to Kluge's credibility as a witness. See In re Retz, 606 F.3d at 1203.

In doing so, we reject Kluge's assertion that the bankruptcy court was required to explicitly make certain findings in its path to decision. In In re Wills, we held that a misstatement or omission as to an asset with little value or that was not property of the estate could be material if it detrimentally affected the administration of the estate. See 243 B.R. at 64. This language, however, does not create a bright line standard for determining materiality in a § 727(a)(4)(A) context. Nor is there other case law establishing that a bankruptcy court must always consider and make these particular findings in a § 727(a)(4)(A) context.

In re Wills also provides that: "[a] false statement or omission that has no impact on a bankruptcy case is not grounds for denial of a discharge under § 727(a)(4)(A)." 243 B.R. at 63. But, this statement stands only for the general proposition that any material misstatement or omission will necessarily impact the estate. This truism does not establish some kind of sub-element

11

that the bankruptcy court must expressly find in rendering a determination of materially in a § 727(a)(4) context. This is particularly evident in the face of subsequent case law, which does not discuss "impact" as a standalone sub-element. See In re Retz, 606 F.3d 1189 (no express discussion as to "impact" on the estate); In re Khalil, 379 B.R. at 172 (states general proposition, but no express discussion as to "impact" on the estate.) Thus, the bankruptcy court was not required to expressly make the findings that Kluge emphatically argues should have been made.

On this record, and based on the broad definition of materiality, the bankruptcy court correctly concluded that Kluge's omission of the income related to a material fact.

### 3. Knowingly Made

A debtor "acts knowingly if he or she acts deliberately and consciously." In re Retz, 606 F.3d at 1198 (citation and quotation marks omitted).

Here, the bankruptcy court found that Kluge knowingly omitted the income. It found that Kluge's testimony at trial was inconsistent with his testimony at the Rule 2004 Examination with respect to whether Kluge knew that the monthly transfers were income. Based on its assessment of Kluge's credibility during his testimony at trial, the bankruptcy court stated that it did not believe Kluge's protestations of innocence or mistaken belief. It determined that Kluge was aware that the transfers were income and, consequently, that he consciously omitted the income from his Schedule I and SOFA. On this record, the bankruptcy court did not err in finding that Kluge knowingly made

12

a false oath in his case.

### *4. Fraudulent Intent*

A debtor acts with fraudulent intent when: (1) the debtor makes a misrepresentation; (2) that at the time he or she knew was false; and (3) with the intention and purpose of deceiving creditors. In re Retz, 606 F.3d at 1198-99 (citation omitted). Fraudulent intent is typically proven by circumstantial evidence or by inferences drawn from the debtor's conduct. Id. at 1199 (citation omitted). Circumstantial evidence may include showing a reckless indifference or disregard for the truth. Id. (citation omitted); In re Wills, 243 B.R. at 64 (intent may be established by a pattern of falsity, debtor's reckless indifference, or disregard of the truth).

Here, the bankruptcy court found that Kluge acted with fraudulent intent when he omitted the income on his Schedule I and SOFA. Citing to In re Khalil, the bankruptcy court stated that circumstantial evidence of fraudulent intent existed. As previously discussed, it observed a number of inconsistencies in Kluge's testimony and found that his testimony at trial lacked credibility.

To the extent Kluge contends that he followed the advice of his bankruptcy counsel when he initially filed his schedules, he presented no credible evidence that his reliance was reasonable or that he relied in good faith. Lack of intent may be proven by a debtor's reliance on his attorney's advice. In re Retz, 606 F.3d at 1199 (citation omitted). The debtor's reliance, however, must be made in good faith, and such reliance is not a defense when the error should have been obvious to the debtor.

13

Id. (citation omitted).

At the trial, Kluge testified that he discussed the alleged loans and money transfers with his bankruptcy counsel at the time of filing.  He testified that he discussed with counsel the type of investment loans he had made to Affirm Direct and that counsel expressly acknowledged a "loan to officer" type of loan.  Kluge also testified that he disclosed the income to counsel.  Yet, he subsequently testified that while he explained to counsel that the money transfers were repayments on his investments, he did not use accounting loan terms or disclose that it would go to household expenses.

The record is devoid of any testimony from Kluge's bankruptcy counsel.  Moreover, Kluge's testimony as to what he disclosed to his bankruptcy counsel is inconsistent, even within the trial itself.  Kluge has not shown either that he relied on his counsel's advice when he failed to disclose the income or that his reliance on counsel's advice, if any, was reasonable or made in good faith.  See In re Retz, 606 F.3d at 1199 ("[A] debtor cannot, merely by playing ostrich and burying his head deeply enough in the sand, disclaim all responsibility for statements which he has made under oath.").

On this record, there are sufficient patterns of falsities or reckless indifference on Kluge's part to support the bankruptcy court's determination that advice of counsel was not a defense.  And, again, we give abundant deference to the bankruptcy court's findings based on its assessment of Kluge's credibility at trial.  Id. at 1196.  Thus, the bankruptcy court did not err in finding that Kluge fraudulently made a false oath

14

in his case.

In sum, the bankruptcy court did not err in finding that Kluge made a false omission on his Schedule I and SOFA, that his false omission related to material facts, and that he omitted the information knowingly and fraudulently.  Therefore, the bankruptcy court did not err in denying Kluge's discharge under § 727(a)(4)(A).

## CONCLUSION

Based on the foregoing, we AFFIRM.

15