# FILED

**NOT FOR PUBLICATION**

## UNITED STATES BANKRUPTCY APPELLATE PANEL
## OF THE NINTH CIRCUIT

| | |
|---|---|
| In re: | BAP No. CC-18-1020-KuFL |
| MARK ALAN SHOEMAKER, | Bk. No. 1:14-bk-15182-GM |
| Debtors. | Adv. No. 1:14-ap-01206-GM |
| MARK ALAN SHOEMAKER, | |
| Appellant, | |
| v. | **MEMORANDUM**[*] |
| UNITED STATES TRUSTEE FOR REGION 16, | |
| Appellee. | |

Argued and Submitted on June 20, 2019
at Pasadena, California

Filed – July 1, 2019

Appeal from the United States Bankruptcy Court
Central District of California

---

[*] This disposition is not appropriate for publication. Although it may be cited for whatever persuasive value it may have, *see* Fed. R. App. P. 32.1, it has no precedential value, *see* 9th Cir. BAP Rule 8024-1.

Honorable Geraldine Mund, Bankruptcy Judge, Presiding

_____

Appearances:     Appellant Mark Alan Shoemaker argued pro se; Russell
                 Clementson argued for appellee, United States Trustee for
                 Region 16.

_____

Before: KURTZ, FARIS, and LAFFERTY, Bankruptcy Judges.

Debtor Mark Alan Shoemaker appeals from the bankruptcy court's judgment in favor of appellee, United States Trustee (UST), denying his discharge under § 727(a)(2)(A)[1] and (a)(4)(A). Mr. Shoemaker also appeals the court's pre-trial rulings denying his motion for summary judgment (MSJ) and granting UST's motions to strike certain affirmative defenses and exclude evidence pertaining to those defenses. For the reasons set forth below, we AFFIRM the bankruptcy court's pre-trial rulings, REVERSE the denial of Mr. Shoemaker's discharge under § 727(a)(2)(A), and AFFIRM the denial of discharge under § 727(a)(4)(A).

## FACTS

Mr. Shoemaker, a licensed attorney, specialized in lender liability issues and foreclosure litigation. He also owned Advocate for Fair Lending, LLC (AFL), a company that, for a fee, assisted homeowners facing

_____

[1] Unless specified otherwise, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532, and "Rule" references are to the Federal Rules of Bankruptcy Procedure.

foreclosure on their homes. In May 2010, the State Bar of California found Mr. Shoemaker ineligible to practice law due to his activities with AFL and disbarred him. Numerous AFL clients sued Mr. Shoemaker.

On May 25, 2010, Mr. Shoemaker filed a chapter 7 petition with the assistance of attorney William Brownstein.[2] Alfred H. Siegel was appointed the chapter 7 trustee (Trustee).

On June 2, 2010, AFL filed a chapter 7 petition, with Mr. Brownstein as the attorney of record. The initial AFL trustee, Carolyn Dye, was replaced on December 13, 2010, by Howard Grobstein. Mr. Grobstein filed a report of no distribution, and the AFL case was closed in December 2011.

## A.    Mr. Shoemaker's Schedules

In his original schedules, Mr. Shoemaker showed personal property valued at $485,829, which included over $400,000 in accounts receivable where "collectibility was doubtful." He valued his 100% interest in AFL at $0. For "other contingent and unliquidated claims of every nature," Mr. Shoemaker stated "none." He signed his petition and other documents under penalty of perjury, stating that the information contained in those documents was true and correct.

At his initial § 341(a) meeting of creditors, Mr. Shoemaker confirmed under oath that he had read his bankruptcy schedules and that they were

---

[2] Mr. Shoemaker's previous chapter 13 case, also filed with the assistance of Mr. Brownstein, was dismissed for failure to file schedules.

accurate. He did not mention that on June 21, 2010, he had received $23,516.83 from the George C. McFarland Trust II (McFarland Trust), established by his grandmother's husband. However, Mr. Shoemaker informed Trustee about a lawsuit he had pending in the Orange County Superior Court against defendants who allegedly attempted to steal the AFL business model.

The meeting of creditors was continued numerous times while Mr. Shoemaker provided additional information and documentation.

In January 2011, Mr. Shoemaker amended his schedules F and H, which listed additional unsecured creditors and co-debtors. Schedule F showed individuals owed refunds from AFL, small claims actions against AFL, and various judgments. Schedule H showed as co-debtors those individuals owed refunds from AFL. The amendments did not show the money received from the McFarland Trust or include any other assets.

At the continued creditors' meeting in February 2011, Mr. Shoemaker disclosed for the first time that he had prepetition purchased $2,120 in jewelry for his ex-girlfriend and that he had "loaned" her $5,000. He also disclosed the $23,516.83 distribution from the McFarland Trust and testified that nine days after receiving the money, he had withdrawn $20,000 in cash from his checking account. Mr. Shoemaker then amended his Schedule C to include his interest in the McFarland Trust and claim it exempt.

4

By letter dated July 7, 2011, Mr. Shoemaker informed Trustee about a contingency fee that he was owed in a district court case entitled *Harris v. Lynwood Unified School District.* Mr. Shoemaker stated that his client would be receiving monies due to his efforts. He maintained that Trustee had an obligation to marshal the asset under § 704 and demanded that Trustee "take all necessary actions to assert the interests of the 'estate'. . . ."

## B.    Extensions Of The Deadline To File A Complaint Objecting To Discharge Under § 727

On August 11, 2010, Trustee filed a stipulation extending the time to object to Mr. Shoemaker's discharge to December 6, 2010. The stipulation specifically referred to UST; however, the order approving the extension included only Trustee and not UST. Accordingly, UST filed a timely motion to extend the deadline for objecting to Mr. Shoemaker's discharge to December 6, 2010, which the bankruptcy court granted. The bankruptcy court approved UST's second motion extending the deadline to March 7, 2011. The court later approved a stipulation between UST and Mr. Shoemaker which extended the deadline from March 7 to April 8, 2011.

## C.    The Adversary Proceeding

On April 8, 2011, UST filed an adversary complaint seeking to deny Mr. Shoemaker's § 727 discharge. The complaint alleged that Mr. Shoemaker failed to disclose over $7,000 in gifts to his ex-girlfriend including the jewelry and the "loan," and his interest in the McFarland

Trust from which he received over $20,000. The complaint further alleged that Mr. Shoemaker failed to provide adequate documentation related to the withdrawal of $20,000 nine days after receiving the money from the McFarland Trust or $13,000 in deposits in his personal checking account. Based on these facts, the UST maintained that Mr. Shoemaker should be denied a discharge under § 727(a)(2)(A), for concealing assets within a year of filing for bankruptcy; § 727(a)(3), for failing to keep or preserve recorded information; § 727(a)(4)(A), for making a false oath; § 727(a)(4)(D), for withholding documents and records; and § 727(a)(5), for failing to satisfactorily explain a loss in assets.

When UST later amended the complaint, Mr. Shoemaker filed a counterclaim against Trustee, individually and in his capacity as chapter 7 trustee; Peter C. Anderson, the United States Trustee, and Jill M. Sturtevant, Assistant United States Trustee. Mr. Shoemaker alleged, among other things, that Trustee failed to pursue the collection of account receivable owed to AFL, which could have been brought into his estate. According to Mr. Shoemaker, if Trustee had complied with his fiduciary duties and marshaled only 50% of the accounts receivable that he mentioned at the July 6, 2010, meeting of creditors, his estate would have had a "surplus." Mr. Shoemaker also mentioned his July 7, 2011 letter to Trustee regarding the contingency fee due in the *Harris* matter. Mr. Shoemaker complained that no assets were ever administered by

6

Trustee or UST. He asserted claims for equitable indemnity, negligence, breach of fiduciary duty, and requested declaratory relief. Eventually, the court dismissed his counterclaims against Mr. Anderson and Ms. Sturtevant with prejudice.

The bankruptcy court scheduled a trial for the adversary proceeding on June 14, 2012, before the Honorable Thomas Donovan.

## D.    Mr. Shoemaker's Proposed Solution To The Adversary Proceeding

About a month before trial, Mr. Shoemaker sent an email to UST, Mr. Kenneth Lau, proposing a possible solution to the existing litigation. Mr. Shoemaker reiterated that Trustee failed to pursue accounts receivable and other assets of his estate. He contended that Trustee and the chapter 7 trustee for AFL were continually put "on notice" of these assets.

Mr. Shoemaker then listed seven matters where contingency fees were due. He maintained that he could pursue the trustees of his estate and of AFL since they did not administer these assets. However, he asked Mr. Lau to agree to let him liquidate the assets. Mr. Shoemaker stated that he would amend his schedules and those of AFL to make sure "there are no problems by potential defendants and everything is clear and clean." Finally, Mr. Shoemaker touted his litigation experience and stated that he was "best placed to know the facts and go after the assets immediately."

Mr. Lau responded, stating that he needed to determine if the substantial assets Mr. Shoemaker identified should have been

7

administered, then or now, by the chapter 7 trustees, but to do so would require supporting documentation and additional information. Mr. Lau suggested continuing the trial date to allow for completion of a factual investigation.

In a follow-up letter to Mr. Lau, Mr. Shoemaker again stated that the chapter 7 trustees were on notice of the accounts receivable and failed to pursue them. He further stated that Mr. Brownstein was on notice and advised about them, but failed to schedule the claims. Mr. Shoemaker proposed proceeding immediately with the matters since the trustees were not doing their job.

**E.     The June 14, 2012 Status Conference**

On June 14, 2012 (the original trial date), the bankruptcy court held a status conference with Mr. Shoemaker, Trustee, and Mr. Lau. With the court's assistance, the parties worked out a skeleton plan to pursue the litigation claims listed by Mr. Shoemaker, with the possibility that something positive could be done for the creditors. Part of the problem was that some of the claims were Mr. Shoemaker's claims, others were AFL's claims, and others were a hybrid. Mr. Shoemaker opined that amounts due his estate if the claims were successful would be anywhere from a low of $200,000 to $300,000, to maybe $1.5 million with AFL receiving "a larger amount." Mr. Shoemaker further explained that his proposal to pursue the litigation was not meant to eliminate any of Trustee's or UST's rights.

Trustee requested that Mr. Shoemaker amend his schedules.

**F.      Mr. Shoemaker's June 20, 2012 Amendments**

On June 20, 2012, two years after he filed his petition, Mr. Shoemaker amended his schedules, which increased the gross value of his personal property from $485,827 to $12,290,946.70. Mr. Shoemaker's interest in AFL increased from $0 to $400,000 due to possible monies owed to his estate. The value of receivables from his law practice (and AFL) went from about $462,727 to $1,614,774. Finally, the scheduled amount for "[o]ther contingent and unliquidated claims of every nature" increased from "none" to $10,163,658.58 based on numerous claims, some of which arose from Mr. Shoemaker's law practice (Litigation Claims).[3]

One of the claims related to the lawsuit in the Orange County Superior Court against defendants who attempted to steal the AFL business model. Mr. Shoemaker valued this claim at $4 million. Mr. Shoemaker had informed Trustee about this claim orally at his initial § 341 meeting of creditors on July 6, 2010. Another claim related to the *Harris* matter, which Mr. Shoemaker valued at $1.5 million.

In addition, Mr. Shoemaker amended Schedule F to reflect a "setoff" of those claims asserted against AFL for refunds. At this point, unsecured

---

[3] Prior to these amendments, on September 21, 2011, Trustee filed a report of no distribution, stating that there was no property available for distribution from the estate over and above that exempted by law. About a month after Mr. Shoemaker filed the amendments to his schedules, Trustee withdrew his report of no distribution.

9

claims amounted to $1,845,631.23. Mr. Shoemaker did not amend AFL's schedules.

**G.     The Counterclaim Against Trustee Is Dismissed**.

In January 2013, since Trustee agreed to examine and possibly pursue the Litigation Claims, Mr. Shoemaker stipulated to the dismissal of all claims against Trustee in the adversary proceeding with prejudice.

**H.     The Closing And Reopening Of The Adversary Proceeding**

On February 21, 2013, the Clerk's office inadvertently closed the adversary case stating: "The complaint filed in the above case has been disposed of and is no longer pending. Since it appears that no further matters are pending that require this adversary proceeding remain open, it is ordered that this adversary proceeding is closed." The closing was vacated due to the clerical mistake and the case was reopened by order entered on February 27, 2013.

**I.     Employment Of Special Counsel**

Trustee filed an application seeking court approval for the employment of Bret D. Lewis, as special counsel, to pursue the Litigation Claims[4] on a contingency basis. The bankruptcy court granted the application.

---

[4] At this point, one of the claims identified was against Mr. Brownstein for malpractice and breach of fiduciary duty.

**J.      The Amended Complaint And Answer**

On January 7, 2014, UST filed a third amended complaint (Complaint) adding Mr. Shoemaker's failure to disclose information revealed in his June 20, 2012, amended schedules as a further basis to deny his discharge under § 727(a)(2)(A) and (a)(4)(A). Based on the newly disclosed information, the Complaint also added a claim under § 727(a)(2)(B) for concealing property of the estate after the filing of the bankruptcy petition.

The Complaint lists the First Claim For Relief as Intentional Transfer and Concealment of Debtor's Property or Property of the Estate in Violation of § 727(a)(2)(A) and (a)(2)(B). This claim lumps together allegations under § 727(a)(2)(A) with those under (a)(2)(B). Many of the allegations referred to Mr. Shoemaker's concealment of his beneficial interest in the McFarland Trust, and requested denial of discharge on that basis under § 727(a)(2)(A). Other allegations referred to the failure to disclose substantial personal property assets valued at $10,163,658.58, and understating the value of those assets. These allegations referred to and requested denial of Mr. Shoemaker's discharge under § 727(a)(2)(B).

The Third Claim for Relief under § 727(a)(4)(A) refers to Mr. Shoemaker's omissions on his schedules, including the jewelry he bought for his ex-girlfriend, the $5,000 loan or gift made to her, the receipt of money from the McFarland Trust, and the undervaluation of contingent

11

and unliquidated claims, including the Litigation Claims.

Mr. Shoemaker pled a number of affirmative defenses in his December 31, 2015, amended answer to the Complaint. Five defenses (defenses 2, 4, 9, 16 and 17) asserted that the Complaint was untimely because the bankruptcy court inadvertently had closed the case in 2013 and there was no extension of time after it was reopened six days later. Mr. Shoemaker also asserted affirmative defenses of equitable estoppel (defenses 6, 16, 22, and 23) and unclean hands (defenses 7, 11, 24, and 25), both alleging that he entered a "compromise" pursuant to which he amended his schedules to disclose the Litigation Claims based on UST's promise not to interfere with the pursuit of the Litigation Claims. He further asserted as an affirmative defense (defenses 12, 26, and 27) that he acted in good faith by cooperating with UST.

On November 25, 2014, the adversary proceeding was transferred from the Los Angeles Division to the San Fernando Valley Division, a new case number was issued, and the matter was assigned to the Honorable Geraldine Mund.

K.     **The Adversary Proceeding Against Third Parties**

On May 9, 2014, Mr. Lewis filed an adversary complaint naming fifty defendants and asserting various claims for relief, including recovery of money/property (Adv. No. 2:14-ap-01314). By September 29, 2015, most of the claims were dismissed, many because they were time-barred. By

November 25, 2015, the adversary proceeding was closed.[5]

### L.     The Pre-Trial Motions And Rulings

In early 2017, Mr. Shoemaker filed his MSJ, alleging that the Complaint was not timely filed under Rule 4004.  Mr. Shoemaker argued that, as a matter of law, UST's Complaint was time barred since it was filed after the time for objecting to his discharge had expired. According to Mr. Shoemaker, Rule 4004 required a motion to extend the deadline; ergo, a court-approved stipulation extending the deadline was insufficient. Mr. Shoemaker also asserted that the Complaint was untimely because the bankruptcy court had inadvertently closed the case for six days.

At the same time, UST filed a motion to strike certain affirmative defenses from Mr. Shoemaker's amended answer, including the five defenses (2, 4, 9, 16 and 17) that related to the timeliness of the Complaint.

The bankruptcy court denied Mr. Shoemaker's MSJ, finding that the Complaint had been timely filed based on the court-approved stipulation between Mr. Shoemaker and UST extending the deadline. The court further found that the inadvertent case closure did not render the Complaint untimely filed.

The court granted UST's motion to strike certain affirmative defenses in full. The bankruptcy court struck the defenses based on the timeliness of the Complaint as lacking merit for the same reasons that it found those

---

[5] Trustee obtained a default judgment for $5,000 in one of those actions.

13

arguments lacked merit in its ruling on the MSJ. The court also struck the good faith and estoppel affirmative defenses because they were not supported or relevant, noting that Mr. Shoemaker did not make any argument in opposition to striking those defenses.

In addition, the bankruptcy court ruled on five motions in limine filed by UST, two of which are the subject of Mr. Shoemaker's appeal. In one of those, UST moved to exclude exhibits offered in support of previously stricken affirmative defenses. In the other, UST moved to exclude portions of witness testimony offered in support of the previously stricken affirmative defenses. The bankruptcy court granted both motions.[6]

In an August 23, 2017 order titled "Order as to Limitation of Defenses of Unclean Hands and Estoppel," which Mr. Shoemaker does appeal, the bankruptcy court stated that to the extent its tentative rulings left open the issue of what evidence could be presented regarding the unclean hands and estoppel affirmative defenses, those tentative rulings were modified because the defenses were based on the conduct of Trustee, not UST.

**M.    The Trial**

The parties submitted a joint pretrial stipulation in which Mr. Shoemaker acknowledged, among other things, that he chose to treat

---

[6] In the remaining three motions, UST sought a protective order excluding testimony from UST's executive officers and trial counsel, and from William Brownstein as a purported expert. The bankruptcy court entered orders granting all three motions, none of which have been appealed.

his amended June 20, 2012, bankruptcy schedules as a "baseline of potential litigation matters" rather than provide the required complete listing of all potential assets. The pretrial stipulation stated: "[I]t was Defendant's understanding that the June 20, 2012 schedules were never intended to be the full extent of the potential litigation cases."

The trial took place on October 10, 2017. Trustee and Mr. Brownstein were the only two witnesses. After trial, the bankruptcy court issued a Memorandum of Decision denying Mr. Shoemaker's discharge under both § 727(a)(2)(A) and (a)(4)(A) and granting judgment for defendant on the § 727(a)(2)(B), (a)(3), and (a)(4)(D) claims.

The bankruptcy court also ruled on Mr. Shoemaker's affirmative defenses. The court rejected Mr. Shoemaker's defense that the Complaint failed to state a claim because that was not an affirmative defense and, in any event, UST had met his burden of proof for his claims under § 727(a)(2)(A) and (a)(4)(A). The court also rejected Mr. Shoemaker's advice-of-counsel defense because there was no evidence that Mr. Brownstein had advised him to omit any assets. The bankruptcy court was also not persuaded by the unclean hands defense because Mr. Shoemaker had not presented any evidence that he was treated inequitably by Trustee or UST. The bankruptcy court further rejected Mr. Shoemaker's defense of lack of materiality as it found that his omission of the Litigation Claims was material, as explained in its specific findings

under § 727(a)(2)(A) and (a)(4)(A).

Finally, the court was not persuaded by Mr. Shoemaker's argument, asserted in his closing brief, that amendments to schedules related back to the original filing date. The court noted that although this is true as to certain things, "it does not excuse a debtor from full disclosure."

On January 4, 2018, the bankruptcy court entered judgment against Mr. Shoemaker denying his discharge under § 727(a)(2)(A) and (a)(4)(A). At this point, the bankruptcy court's pre-trial rulings merged into the final judgment. *United States v. 475 Martin Lane,* 545 F.3d 1134, 1141 (9th Cir. 2008). Mr. Shoemaker filed a timely appeal from the judgment.

## JURISDICTION

The bankruptcy court had jurisdiction pursuant to 28 U.S.C. §§ 1334 and 157(b)(2)(J). We have jurisdiction under 28 U.S.C. § 158.

## ISSUES

Whether the bankruptcy court erred by: (1) denying Mr. Shoemaker's MSJ; (2) striking Mr. Shoemaker's affirmative defenses; (3) excluding evidence at trial; and (4) denying Mr. Shoemaker a discharge under § 727(a)(2)(A) and (a)(4)(A).

## STANDARDS OF REVIEW

**A.    Pre-Trial Rulings**

We review summary judgment orders de novo. *Shahrestani v. Alazzeh (In re Alazzeh),* 509 B.R. 689, 694 n.5 (9th Cir. BAP 2014).

We also review a bankruptcy court's interpretation and application of the bankruptcy rules de novo. *All Points Capital Corp. v. Meyer (In re Meyer)*, 373 B.R. 84, 87 (9th Cir. BAP 2007).

We review for an abuse of discretion the bankruptcy court's decision regarding the treatment of an affirmative defense. *In re Alazzeh*, 509 B.R. at 694 (citing *389 Orange St. Partners v. Arnold*, 179 F.3d 656, 664 (9th Cir. 1999)).

We also review a bankruptcy court's evidentiary rulings for abuse of discretion, and then only reverse if any error would have been prejudicial to the appellant. *Van Zandt v. Mbunda (In re Mbunda)*, 484 B.R. 344, 351-52 (9th Cir. BAP 2012) (citing *Johnson v. Neilson (In re Slatkin)*, 525 F.3d 805, 811 (9th Cir. 2008)). "We afford broad discretion to a [bankruptcy] court's evidentiary rulings. To reverse such a ruling, we must find that the [bankruptcy] court abused its discretion and that the error was prejudicial. A reviewing court should find prejudice only if it concludes that, more probably than not, the [bankruptcy] court's error tainted the verdict." *Id.* at 352 (citing *Harper v. City of L.A.*, 533 F.3d 1010, 1030 (9th Cir. 2008) (citations and internal quotation marks omitted)).

In determining whether a bankruptcy court abuses its discretion, we apply a two-part test. *United States v. Hinkson*, 585 F.3d 1247, 1262 (9th Cir. 2009) (en banc). We first review de novo any legal issues raised on appeal. Assuming we find no reversible error given the legal issues raised, we

17

review any factual issues under the clearly erroneous standard. We must affirm unless those findings are illogical, implausible or without support in inferences that may be drawn from the facts in the record. *Id.*

## B.     Denial Of Discharge Rulings

In objection to discharge appeals: "(1) the [bankruptcy] court's determinations of the historical facts are reviewed for clear error; (2) the selection of the applicable legal rules under § 727 is reviewed de novo; and (3) the application of the facts to those rules requiring the exercise of judgments about values animating the rules is reviewed de novo." *Retz v. Samson (In re Retz)*, 606 F.3d 1189, 1196 (9th Cir. 2010) (quoting *Searles v. Riley (In re Searles)*, 317 B.R. 368, 373 (9th Cir. BAP 2004), *aff'd*, 212 F. App'x 589 (9th Cir. 2006)).

Under § 727(a)(2)(A), the intent to hinder, delay, or defraud is a question of fact that requires the trier of fact to delve into the mind of the debtor and may be inferred from surrounding circumstances. *In re Searles*, 317 B.R. at  379 (citing *Emmett Valley Assocs. v. Woodfield (In re Woodfield)*, 978 F.2d 516, 518 (9th Cir. 1992)).

Under § 727(a)(4)(A), whether a debtor made a false oath, whether the false statements were material, and whether the debtor had the requisite fraudulent intent are all questions of fact reviewed under the clearly erroneous standard. *In re Retz*, 606 F.3d at 1197.

A factual determination is clearly erroneous if the trial judge's

18

interpretation of the facts is "illogical, implausible, or without support in the record." *Hinkson*, 585 F.3d at 1261–62 & n.21.

## DISCUSSION

**A.    The bankruptcy court did not err by denying Mr. Shoemaker's MSJ.**

Mr. Shoemaker argues that UST's Complaint objecting to his discharge was untimely as a matter of law. First, he contends that the time deadline to file a complaint under Rule 4004(a) objecting to his discharge could only be extended based on a motion, not by court approval of a stipulation. According to Mr. Shoemaker, the last extension of time approved by the bankruptcy court was in a pleading captioned as a "stipulation" instead of a "motion." Relying on *Alazzeh*, Mr. Shoemaker contends that without a motion, the stipulation was ineffective to extend the time for filing the complaint. Second, he contends that the closing of the adversary case by the clerk's office barred reopening or refiling of the action under Rule 4004.[7] Mr. Shoemaker is mistaken on both contentions.

Rule 9006(b) governs requests for extensions of time. Rule 9006(b)(3) states that the bankruptcy court can extend the time for taking action under Rule 4004(a) "only to the extent and under the conditions stated in that

---

[7] Disregarding Rule 8014(a)(8), Mr. Shoemaker's brief fails to provide us with citations to the record. Adequate citation to the record includes the specification of each page and the line(s) therein on which the party relies on appeal. We are not obliged to search the entire record, unaided, for error. *Mitchel v. Gen. Elec. Co.*, 689 F.2d 877, 879 (9th Cir. 1982).

rule." Rule 4004(b)(1) provides that "[o]n motion of any party in interest, after notice and hearing, the court may for cause extend the time to object to discharge" if the motion is filed before the time has expired.

The Panel has strictly construed the requirements in Rule 4004(b)(1), setting forth two "guiding principles": first, the motion must be filed before the deadline has passed; and second, an extension is not automatically granted because a motion has been filed—"[t]he bankruptcy court, rather than the parties, has discretion to determine if cause exists." *In re Alazzeh*, 509 B.R. at 694.

Mr. Shoemaker's reliance on *Alazzeh* for his motion versus stipulation argument is misplaced. *Alazzeh* held that an informal, unfiled stipulation between a debtor and creditor to extend the deadline under Rule 4004(b)(1) is ineffective. There, the pro se debtor agreed that the creditor could have additional time, but no motion or stipulation was filed and thus there was no court involvement. Accordingly, the requirements for Rule 4004(b)(1) were plainly not met. In contrast, the stipulation between UST and Mr. Shoemaker for the extension of time was filed with the bankruptcy court before the deadline passed and the stipulation was approved by the bankruptcy court.

Furthermore, the title of a pleading does not control its character. *Hasbrouck v. Texaco, Inc.*, 879 F.2d 632, 635 (9th Cir. 1989) ("The nomenclature the movant uses [to title a pleading] is not controlling.").

20

Courts look to the substance of the pleading to determine the relief requested. *See Miller v. Transamerican Press, Inc.*, 709 F.2d 524, 527 (9th Cir. 1983) (court, not appellant, decides whether motion is appropriate for relief requested). Applying these guidelines, the stipulation between Mr. Shoemaker and UST was functionally equivalent to a motion. *See Marine Midland Bank v. Slyman*, 995 F.2d 362, 365 (2d Cir. 1993) (holding a stipulation "operated as a consent motion."); *Fifth Third Bank v. Hayes (In re Hayes)*, No. 11-3226, 2012 WL 12875619, at *3 (Bankr. S.D. Ohio Mar. 22, 2012) (construing agreed order extending deadline regarding dischargeability as a motion).

The *Hayes* case is factually similar. In *Hayes,* the bankruptcy court entered an agreed order between the debtor and the creditor-bank, which granted the bank an extension of time to file a complaint objecting to the debtor's discharge. The caption on the agreed order stated "Agreed Order For Creditor Fifth Third Bank to Object To Dischargeability of Debtor M. Donald Hayes." After the complaint and an answer were filed, the debtor moved for judgment on the pleadings, contending that the complaint was untimely because no motion was filed prior to the agreed order and asserting that the language of the agreed order did not extend either the discharge or dischargeability deadline. The *Hayes* bankruptcy court construed the agreed order as a motion for the relief sought that was provided for in the proposed order—an extension of the deadline to file a

21

complaint objecting to the debtor's discharge. The court noted that its signing and entering of the proposed order "is the court's granting of the requested relief." *Id.* The bankruptcy court's reasoning in *Hayes* is sound and applicable under these circumstances.

Moreover, Mr. Shoemaker cannot claim any prejudice when he was a party to the stipulation and had notice of what was sought and an opportunity to respond. *In re Hayes,* 2012 WL 12875619, at \*4 (holding debtor waived objection to extension of deadline to object to discharge when he consented to agreed order.).

Finally, the fact that the adversary proceeding was inadvertently closed due to a clerical error does not make the stipulation for the extension of time ineffective. Courts have the power to vacate orders to correct their own mistakes. *Wiersma v. Bank of the West (In re Wiersma)*, 483 F.3d 933, 939 (9th Cir. 2007). As the bankruptcy court noted, there was no basis for the order closing the case and thus it was proper to vacate it. Once an order is vacated, it is as though it never existed. *United States v. Jerry*, 487 F.2d 600, 607 (3d Cir. 1973). The adversary proceeding was not dismissed and the mere closing of a case does not equate to dismissal. *Kistler v. Cleveland (In re Cleveland)*, 353 B.R. 254, 261 (Bankr. E.D. Cal. 2006) (in case converted from chapter 7 to chapter 13, the court administratively closed the § 727(a) adversary proceeding "unless and until the case is reconverted to chapter 7" at which time it would be reopened). In sum, the closing of the case had no

22

impact on the timeliness of the Complaint.

Mr. Shoemaker's citation to *Staffer v. Predovich (In re Staffer),* 306 F.3d 967, 971 (9th Cir. 2002), without any analysis, is not persuasive as it is factually and legally distinguishable. That case dealt with an unscheduled creditor's motion to reopen the bankruptcy case and file a nondischargeability action under § 523(a)(3)(B). In affirming this Panel, the Ninth Circuit held that, in accordance with Rule 4007(b), which allows a § 523(a)(3)(B) complaint to be filed "at any time," there was no rule-imposed time bar to the creditor's action. In short, *Staffer* had nothing to do with the inadvertent closing of an adversary proceeding due to a clerical mistake.

In sum, the bankruptcy court properly denied Mr. Shoemaker's motion for summary judgment.

## B.    The bankruptcy court did not abuse its discretion by striking certain affirmative defenses.

Mr. Shoemaker contends that the bankruptcy court abused its discretion by striking his affirmative defenses relating to equitable estoppel, good faith, and materiality.[8] In support, he asserts that these defenses "had a basis in law and fact," followed by citations to various

---

[8] As noted by UST, the bankruptcy court did not strike Mr. Shoemaker's affirmative defense of materiality (defenses 14, 28, and 29). Although UST's motion included defense number 28 in the title of its motion, it was not discussed in the body of its motion or the court's tentative ruling.

cases. However, he fails to offer any reasoning or rationale for his contentions.

We require contentions to be accompanied by reasons. *See Indep. Towers of Wash. v. State of Wash.*, 350 F.3d 925, 929-30 (9th Cir. 2003) ("'[A] bare assertion of an issue does not preserve a claim'" rather "[w]e require contentions to be accompanied by reasons.") (quoting *D.A.R.E. Am. v. Rolling Stone Magazine*, 270 F.3d 793, 793 (9th Cir. 2001)). "Our circuit has repeatedly admonished that we cannot 'manufacture arguments for an appellant' and therefore we will not consider any claims that were not actually argued in appellant's opening brief." *Id. (citing Greenwood v. Fed. Aviation Admin.*, 28 F.3d 971, 977 (9th Cir. 1994)); *see also Int'l Union of Bricklayers & Allied Craftsman Local Union No. 20, ALF-CIO v. Martin Jaska, Inc.*, 752 F.2d 1401, 1404 (9th Cir. 1985) ("[W]e will not ordinarily consider matters on appeal that are not specifically and distinctly raised and argued in appellant's opening brief."). If an argument is not properly argued and explained, the argument is waived. *Indep. Towers of Wash.*, 350 F.3d at 929-30. Such is the case here since Mr. Shoemaker failed to assist us in evaluating the bankruptcy court's purported errors. Accordingly, we affirm on this basis.[9]

---

[9] Our review of the record shows that in the bankruptcy court proceedings, Mr. Shoemaker did not make any arguments in opposition to the UST's motion to strike certain affirmative defenses. Accordingly, even if Mr. Shoemaker had made some

(continued...)

**C.    The bankruptcy court did not abuse its discretion by granting UST's motions in limine and excluding certain evidence at trial**.

UST filed five motions in limine: (1) for a protective order regarding testimony by UST counsel and employees; (2) for a protective order regarding the UST's executive managers; (3) to exclude purported expert testimony by William Brownstein; (4) to exclude testimony regarding previously stricken affirmative defenses; and (5) to exclude exhibits regarding previously stricken affirmative defenses. The bankruptcy court granted all of UST's motions in limine.

Mr. Shoemaker appeals the two orders excluding testimony and excluding trial exhibits regarding previously stricken affirmative defenses. Mr. Shoemaker contends that the bankruptcy court abused its discretion in granting these motions as these rulings "violated" his right to present evidence on his affirmative defenses. However, once again Mr. Shoemaker fails to point out the court's alleged error in other than a conclusory fashion nor has he attempted to show prejudice. *See In re Mbunda*, 484 B.R. at 352 (to reverse an evidentiary ruling, we must find that the bankruptcy court abused its discretion and that the error was prejudicial). Accordingly, there is nothing for us to review and we affirm on that basis. *Greenwood*, 28 F.3d

---

[9](...continued)
specific and distinct arguments on appeal, we would not consider them. *Cold Mountain v. Garber*, 375 F.3d 884, 891 (9th Cir. 2004).

at 977 (we cannot "manufacture arguments for an appellant" and therefore we will not consider any claims that were not actually argued in appellant's opening brief).

Mr. Shoemaker also appeals the bankruptcy court's August 23, 2017 "Order as to Limitation of Defenses of Unclean Hands and Estoppel" (Limitation of Defenses Order). He argues that the unclean hands and estoppel affirmative defenses apply because UST "approv[ed]" his June 2012 amendment of schedules in order to use this as a basis for UST's second amended complaint.

Mr. Shoemaker misconstrues the effect of the Limitation of Defenses Order. In the order, the court stated that its tentative rulings on five motions by UST "left open the issue of what testimony, witnesses and documents can be presented as to the issue of unclean hands and estoppel." The order explained that those defenses were based on actions of Trustee and another trustee in a related case, and "did not involve the actions or workings of the Office of the United States Trustee." According to the order, "[t]o the extent that the tentative rulings discuss this as an open issue, they are hereby modified." By its terms, the Limitation of Defenses Order did not exclude evidence or strike any defense; it simply modified the bankruptcy court's tentative rulings and did not modify any of the five orders relating to the motions in limine themselves.

Indeed, Mr. Shoemaker appealed two of those orders granting UST's

motions in limine to exclude testimony and exhibits regarding the previously stricken affirmative defenses discussed above. He did not appeal the orders granting UST's motions regarding testimony: (1) by UST counsel and employees; (2) by UST executive management; or (3) by Mr. Brownstein as an expert. Accordingly, there is no basis to reverse the bankruptcy court's Limitation of Defenses Order.

## D. The bankruptcy court erred by denying Mr. Shoemaker his discharge under § 727(a)(2)(A).

### 1. General Considerations

The party objecting to discharge bears the burden of proof, which under § 727 is a preponderance of the evidence. Rule 4005; *In re Retz*, 606 F.3d at 1196; *see also W. Wire Works, Inc. v. Lawler (In re Lawler)*, 141 B.R. 425, (9th Cir. BAP 1992) (preponderance of evidence standard, rather than clear and convincing standard, applies to discharge cases grounded in allegations of fraud). To the extent Mr. Shoemaker contends that the preponderance of the evidence burden of proof is unfair or otherwise inapplicable, he is mistaken. In *Grogan v. Garner*, 498 U.S. 279, 287 (1991), the court explained:

> Because the preponderance-of-the-evidence standard results in a roughly equal allocation of the risk of error between litigants, we presume that this standard is applicable in civil actions between private litigants "unless particularly important individual interests or rights are at stake." We have previously held that a debtor has no constitutional or 'fundamental' right

27

to a discharge in bankruptcy. We also do not believe that, in the context of provisions designed to exempt certain claims from discharge, a debtor has an interest in discharge sufficient to require a heightened standard of proof. (citations omitted).

At the same time, when utilizing this standard of proof, bankruptcy courts are guided by certain general principles governing denial of discharge claims. To effectuate the fresh start policy, a claim for denial of a discharge under § 727 is construed liberally in favor of the discharge and strictly against a person objecting to the discharge. *First Beverly Bank v. Adeeb (In re Adeeb)*, 787 F.2d 1339, 1342 (9th Cir. 1986). The opposing admonition is that the bankruptcy discharge and its opportunity for a fresh start is limited to the "honest but unfortunate" debtor. *Grogan*, 498 U.S. at 286–87.

**2. Section 727(a)(2)(A)**

Section 727 directs courts to grant a debtor a discharge unless

(2) the debtor, with intent to hinder, delay, or defraud a creditor . . . has . . . concealed—

> (A) property of the debtor, within one year before the date of the filing of the petition.

To deny Mr. Shoemaker his discharge under § 727(a)(2)(A), UST must demonstrate two elements existed within one year prior to the filing of Mr. Shoemaker's bankruptcy petition: (1) a disposition of property, such as transfer or concealment, and (2) a subjective intent on the debtor's part to

hinder, delay or defraud a creditor through the act of disposing of the property. *Hughes v. Lawson (In re Lawson)*, 122 F.3d 1237, 1240 (9th Cir. 1997).

UST's allegations under § 727(a)(2)(A) related to assets which Mr. Shoemaker did not disclose in his initial schedules: the $5,000 loan/gift that he made to his former girlfriend; the increase in value of his ownership interest in AFL showing $400,000 rather than the $0 initially reported; and Mr. Shoemaker's amendment to his schedules which showed the Litigation Claims under "other contingent and unliquidated claims."

The bankruptcy court found in favor of UST on the § 727(a)(2)(A) claim. According to the court, while there was no evidence as to why Mr. Shoemaker omitted the Litigation Claims on his schedules prior to the June 20, 2012 amended schedule B, all of these claims arose from his practice of law, which shut down approximately six days after his bankruptcy filing. The court concluded that Mr. Shoemaker knew the Litigation Claims existed and intentionally omitted them from his initial schedules, his disclosures at the various § 341(a) meetings, and his amended schedules. The bankruptcy court further found that Mr. Shoemaker "only revealed them when he thought that he could receive a benefit from their collection on behalf of the estate." Moreover, the bankruptcy court determined that the omission was material and that "based on the evidence and the inferences drawn from his course of conduct, it is clear that — except as to the loan and gift to [the ex-girlfriend], [Mr.] Shoemaker

29

intentionally concealed this property of the estate and thus violated § 727(a)(2)(A)." In the end, although the court decided it did not need to make a ruling on the loan to the ex-girlfriend, it concluded that UST had proven each element of § 727(a)(2)(A) so as to warrant denial of the discharge.

On appeal, Mr. Shoemaker contends that the bankruptcy court erred because it made no findings of fact or conclusions of law that he concealed assets within one year before the date of the filing of the petition. We agree. In its ruling, which pertained to the Litigation Claims, the bankruptcy court improperly conflated the requirements under § 727(a)(2)(A) with those under § 727(a)(2)(B).

Under the plain language of § 727(a)(2)(A), the transfer or concealment concerns property of the debtor within the year preceding bankruptcy. In other words, the statute requires that both the relevant act and the intent must be found within the year preceding the filing of the petition. In contrast, under § 727(a)(2)(B), the concealment concerns property of the estate and occurs at the time of the filing and after. Therefore, the post-petition period is implicated. Indeed, the record shows, and the bankruptcy court found, that Mr. Shoemaker omitted the Litigation Claims from his initial schedules and failed to disclose them prior to the June 20, 2012 amended Schedule B. The bankruptcy court also found

"[Mr.] Shoemaker intentionally concealed this *property of the estate*[10] and thus violated § 727(a)(2)(A)." Moreover, although § 727(a)(2)(A) does not contain a materiality requirement, the bankruptcy court erroneously considered the materiality of Mr. Shoemaker's omissions. *See Fogal Legware of Switzerland, Inc. v. Wills (In re Wills)*, 243 B.R. 58, 65 (9th Cir. BAP 2013) (§ 727(a)(2)(A) does not contain a materiality element).

In sum, although the record supports an inference that Mr. Shoemaker was aware of the Litigation Claims at the time of his filing, there is no evidence showing that Mr. Shoemaker attempted or intended to conceal the Litigation Claims one year prior to his bankruptcy filing as required under the plain language of § 727(a)(2)(A). Accordingly, the bankruptcy court applied an incorrect standard of law and, therefore, abused its discretion in denying Mr. Shoemaker his discharge under § 727(a)(2)(A).

E.     **The bankruptcy court did not err by denying Mr. Shoemaker his discharge under § 727(a)(4)(A).**

Section 727(a)(4)(A) provides that a chapter 7 debtor shall be granted a discharge unless "the debtor knowingly and fraudulently, in or in connection with the case—(A) made a false oath or account."

A plaintiff bringing a claim under § 727(a)(4)(A) must prove that:

---

[10] Moreover, according to Mr. Shoemaker, some of the Litigation Claims were a "hybrid," meaning that the proceeds of such claims belonged to both Mr. Shoemaker and AFL.

"(1) the debtor made a false oath in connection with the case; (2) the oath related to a material fact; (3) the oath was made knowingly; and (4) the oath was made fraudulently." *In re Retz*, 606 F.3d at 1197 (quoting *Roberts v. Erhard (In re Roberts)*, 331 B.R. 876, 882 (9th Cir. BAP 2005)). "The elements of 'knowingly' and 'fraudulently' may not be conflated. They each must be proven." *Id. (*citing *In re Roberts*, 331 B.R. at 885).

UST must first show that Mr. Shoemaker made a false statement or omission. UST points to Mr. Shoemaker's initial failure to disclose (1) all potential Litigation Claims (which he only did some 18 months after his filing), (2) the McFarland Trust distribution, and (3) the $5,000 loan/gift to his ex-girlfriend. On appeal, we are concerned only with the Litigation Claims as the bankruptcy court found that the omissions as to the McFarland Trust and the loan/gift to his ex-girlfriend had no resulting impact on the administration of the case.

For purposes of § 727(a)(4)(A), errors and omissions made by debtors in their schedules and statement of financial affairs constitute false oaths. *In re Retz*, 606 F.3d at 1196 ("A common instance of 'false oath' is when a debtor declares that the schedule of property is true and correct and it appears that the debtor has knowingly and fraudulently omitted assets from it."). However, "if items were omitted by mistake or upon honest advice of counsel, to whom the debtor had disclosed all the relevant facts, the declaration will not be deemed willfully false, and the discharge should not

32

be denied because of it." *Id.* (citations omitted).

Here, Mr. Shoemaker omitted the Litigation Claims in his initial schedules despite indicating that he was not aware, at the time, of any errors or omissions in any of his schedules. Furthermore, as the bankruptcy court found, Mr. Shoemaker amended his schedules more than once over the course of his bankruptcy proceedings, but he did not list the Litigation Claims until his June 20, 2012 amendments, as part of a compromise with Trustee and UST. In addition, although he included the Litigation Claims in the June 20, 2012 amendments, Mr. Shoemaker indicated in the pre-trial statement that this was "a partial list of potential litigation matters." There is nothing in the record showing that Mr. Shoemaker ever disclosed a "full" list of potential litigation matters. Under these circumstances, the bankruptcy court did not clearly err in finding that the false oath requirement was met.

The record also supports the bankruptcy court's finding of materiality. The Litigation Claims had a high monetary value of $10 million and their omission from Mr. Shoemaker's schedules for almost two years after his filing constituted a significant obstacle to the expeditious and efficient administration of his estate. *See id.* ("A fact is material if it bears a relationship to the debtor's business transaction or estate, or concerns the discovery of assets, business dealings, or the existence and disposition of the debtor's property.").

The record shows that once the Litigation Claims were disclosed almost two years after Mr. Shoemaker's filing, Trustee withdrew his no-asset report and found an attorney to take the collection cases on a contingency basis, who, in turn, filed an action against numerous defendants on the estate's behalf. Many of those cases were dismissed as time barred. The bankruptcy court noted that "had [Mr.] Shoemaker timely and completely revealed these [Litigation Claims], they may have had substantial value." The record shows that the estate suffered a detriment from Mr. Shoemaker's delay in amending his schedules to include the Litigation Claims.

The bankruptcy court was also justified in finding that the omission of the Litigation Claims was knowing. "A person acts knowingly if he or she acts deliberately and consciously." *In re Roberts*, 331 B.R. at 883-84. The facts in the record show (1) Mr. Shoemaker was an experienced litigator; (2) many of the Litigation claims arose out of his law practice; and (3) his law practice closed six days after his bankruptcy filing. These facts allow a reasonable and permissible inference that Mr. Shoemaker knew that his initial schedules and statement of financial affairs, and some amendments, were not true because they did not list the Litigation Claims. Yet, Mr. Shoemaker signed them under penalty of perjury stating that they were correct. Accordingly, the bankruptcy court did not clearly err in finding that Mr. Shoemaker's omission was a knowing one.

To demonstrate fraudulent intent, UST bore the burden of showing that "(1) [Mr. Shoemaker] made the representations [e.g., a false statement or omission in bankruptcy schedules]; (2) that at the time *he knew they were false*; [and] (3) . . . he made them with the *intention and purpose of deceiving the creditors . . . ." In re Retz*, 606 F.3d at 1198-99 (citation omitted). "Intent is usually proven by circumstantial evidence or by inferences drawn from the debtor's conduct." *Id.* (citation omitted). "Reckless indifference or disregard for the truth may be circumstantial evidence of intent, but it is not sufficient, alone, to constitute fraudulent intent." *Id.* (citation omitted). A debtor's fraudulent intent "may be established by inferences drawn from his or her course of conduct." *In re Wills*, 243 B.R. at 64.

The record shows that Mr. Shoemaker did disclose at least two of the Litigation Claims to Trustee at different points in time prior to the June 20, 2012 amendments to his schedules. At the initial meeting of creditors, Mr. Shoemaker mentioned the pending misappropriation lawsuit. Later, he wrote a letter to Trustee informing him about a contingency fee that was due in the *Harris* matter. However, in his amendments to his schedules prior to June 20, 2012, he did not disclose these matters.

A debtor's continuing duty to assure the accuracy of his or her schedules and statement of financial affairs "means that the proper method of correction is a formal amendment of the schedules. An unfiled letter to the trustee does not suffice because it is not in the plain view of all parties in

interest who should be entitled to rely on the accuracy of the court's official file." *In re Searles*, 317 B.R. at 377 (unfiled letter to the trustee did not suffice to exonerate the debtor). Likewise, Mr. Shoemaker's testimony at the § 341(a) meeting regarding the pending misappropriation lawsuit was not sufficient to correct the errors on his Schedule B "because [such testimony] is not in the plain view of the parties in interest who should be entitled to rely on the accuracy of the court's official file." *Id.*; *see Beauchamp v. Hoose (In re Beauchamp)*, 236 B.R. 727 (9th Cir. BAP 1999) (disclosure of secreted assets at or before the § 341 meeting does not preclude finding of intent to hinder, delay or defraud); *Cf. Gullickson v. Brown (In re Brown)*, 108 F.3d 1290, 1294 (10th Cir. 1997) (concluding that although debtor should have amended his bankruptcy schedules to correct the error, as a matter of law no inference of fraudulent intent can be drawn from an omission when the debtor promptly brings it to the court's or trustee's attention absent other evidence of fraud).

On this record, the bankruptcy court could reasonably infer Mr. Shoemaker's fraudulent intent from the cumulative effect of Mr. Shoemaker's continued representations that his schedules and statement of financial affairs were correct (when they were not), the omission of the Litigation Claims from any amendments until almost two years post-petition, and the timing of his disclosure as part of a "compromise" of the § 727 litigation. Further, Mr. Shoemaker's omission of the Litigation Claims was so intertwined with his law practice and business

with AFL, that the bankruptcy court could properly infer that his failure to make full and accurate disclosure in his statements under oath was intentional and was for the purpose of deceiving creditors and Trustee. *See Khalil v. Developers Surety and Indemnity Co. (In re Khalil)*, 379 B.R. 163, 175 (9th Cir. BAP 2007) ("The existence of more than one falsehood, together with a debtor's failure to take advantage of the opportunity to clear up all inconsistencies and omissions, such as when filing amended schedules, *can* be found to constitute a basis for a finding of *intent to deceive*."); *In re Searles*, 317 B.R. at 377 ("Where the offending oath is contained in the schedules or required statements, the debtor's continuing duty to assure the accuracy of such schedules and statements means that the proper method of correction is a formal amendment of the schedules."); *MacLeod v. Arcuri (In re Arcuri)*, 116 B.R. 873, 882 (Bankr. S.D.N.Y. 1990) (where the amended filings "were done at the debtor's leisure," such tardy amendment falls "well short of the requisite disclosure."), *abrogated on other grounds by Nisselson v. Wolfson (In re Wolfson)*, 139 B.R. 279 (Bankr. S.D.N.Y. 1992).

In the end, the bankruptcy court's finding that Mr. Shoemaker had the requisite fraudulent intent was not illogical, implausible, or without support in the record. *Anderson v. Bessemer City*, 470 U.S. 564, 574 (1985) (where two permissible views of the evidence exist, the factfinder's choice between them cannot be clearly erroneous.).

It is unclear why Mr. Shoemaker omitted the Litigation Claims from

his schedules, although throughout the record he blames Mr. Brownstein for the omissions on his schedules and blames Trustee for failing to pursue the assets that he disclosed. Nonetheless, finding a motive is not necessary for a finding of fraudulent intent. *In re Kahlil*, 379 B.R. at 176 ("Motive can support a finding of knowing and fraudulent intent, but it is not indispensable.").

Moreover, Mr. Shoemaker argues that he did not act with fraudulent intent but that the errors and omissions were the result of mistakes made by Mr. Brownstein, his counsel, and his reliance on him. Generally, a debtor who acts in reliance on the advice of counsel lacks the requisite intent necessary to deny a discharge. *In re Adeeb*, 787 F.2d at 1343. However, the reliance on counsel must be in good faith. *Id.* In addition, "the advice of counsel is not a defense when it is transparently plain that the property should be scheduled." *Rita Girl, Inc. v. Mascula (In re Mascula)*, 505 F.2d 274, 277 n.4 (1st Cir. 1974).

Here, the bankruptcy court found that there was no evidence that Mr. Brownstein gave Mr. Shoemaker advice to not: (1) reveal the McFarland Trust before or after distribution; (2) schedule the loan that he made to his ex-girlfriend; and (3) include all of his litigation assets in the initial or later schedules. The court found that, at best, Mr. Brownstein testified that he had no memory of giving such advice. However, he further testified that he would not have given that advice. The court noted that Mr. Shoemaker did

38

not testify at trial and thus there was no evidence that he received advice from Mr. Brownstein that caused him to fail to disclose these assets. Finally, the court found that because Mr. Shoemaker was an attorney, it was not credible that he could have believed that his potential lawsuits were not assets. The bankruptcy court did not err in rejecting the reliance on counsel defense under these circumstances.

Mr. Shoemaker further contends that the bankruptcy court weighed all evidence against him, which was contrary to its duty to require the UST to bear the burden of proof. Mr. Shoemaker is mistaken. The bankruptcy court was aware of UST's burden of proof and weighed all the evidence of record, finding that preponderance of the evidence weighed against Mr. Shoemaker on all elements relevant to the § 727(a)(4)(A) claim. If the bankruptcy court's account of the evidence is plausible in light of the record, we cannot reverse even if we are convinced that we would have weighed the evidence differently. *Anderson*, 470 U.S. at 574. On this record, we cannot find that the bankruptcy court's findings on the § 727(a)(4)(A) claim constitute clear error.

Finally, Mr. Shoemaker argues that the bankruptcy court's judgment renders Rule 1009 superfluous. While it is true that by virtue of Rule 1009 debtors have an absolute right to amend their schedules, the amendment does not cleanse the original statements if they are found to be tainted and fraudulent. *Hansen v. Moore (In re Hansen)*, 368 B.R. 868, 878 (9th Cir. BAP

2007) (affirming bankruptcy court's refusal to allow the debtor to use a "foxhole conversion" to absolve the debtor of fault when the debtor waited until after the meeting of creditors to amend the schedules). More importantly, as shown by the record, Mr. Shoemaker did not amend the schedules to include the Litigation Claims until almost two years after the filing, and, when he did amend them, he still did not fully disclose all of the potential claims. Accordingly, the bankruptcy court's judgment does not render Rule 1009 superfluous.

## CONCLUSION

For the reasons stated, we AFFIRM the bankruptcy court's pre-trial rulings, REVERSE the bankruptcy court's judgment denying Mr. Shoemaker his discharge under § 727(a)(2)(A), and AFFIRM its ruling under § 727(a)(4)(A).